569 P.2d 308

**HARTFORD ACCIDENT AND INDEMNITY COMPANY, a Foreign Insurance Corporation, Appellant,**

v.

**PHOENIX SAND & ROCK, INC., an Arizona Corporation, Appellee.**

**No. 1 CA–CIV 3352.**

Court of Appeals of Arizona, Division 1, Department A.

Sept. 13, 1977.

Jennings, Strouss & Salmon by M. Byron Lewis and William F. Haug, Phoenix, for appellant.

Smith, Riggs, Buckley, Riggs & Fuller by Donald O. Fuller, Mesa, for appellee.

## OPINION

HAIRE, Judge.

The questions urged on this appeal arise from the trial court's denial of appellant Hartford's motion to permanently stay execution of a judgment obtained against it in its capacity as a surety on a statutory contractor's bond posted pursuant to A.R.S. § 32–1152. The judgment had previously been entered in favor of appellee Phoenix Sand & Rock, Inc., against Hartford for "the sum of $4,122.99 *or the unexhausted penalty of the bond. . . .* " (Emphasis added).

The basis for the motion to stay execution was that a third party (Mission Bank) had obtained a prior judgment against Hartford on the bond in question for the full amount of the bond, and that the prior judgment had been paid, thereby exhausting the penalty of the bond and relieving Hartford of further liability.

A.R.S. § 32–1152 provides in pertinent part:

"D . . . The person claiming against the bond or cash deposit may maintain an action at law against the contractor and the surety or depository and the surety bond or deposit may be sued upon in successive actions until the full amount thereof is exhausted. . . The surety bond or deposit shall be continuous in form and shall be conditioned that the total aggregate liability of the surety or depository for all claims shall be limited to the face amount of the bond irrespective of the number of years the bond is in force. If the corporate surety desires to make payment without awaiting court action, the amount of any bond filed in compliance with this chapter shall be reduced to the extent of any payment or payments made by the corporate surety in good faith thereunder. Any such payments shall be based on priority of written claims received by the corporate surety prior to court action."

It will be noted that the statute authorizes the surety to make payments without

awaiting court action with a *pro tanto* reduction of the amount of·the bond to the extent that such payments are made "in good faith." Further, if such voluntary payments are made, the statute expressly provides for the order of priority in payment of such claims. Although the statute has no similar provision setting forth a standard for the determination of priority of litigated claims, this omission has been remedied by case law. Thus, the Court of Appeals in *Husky v. Lee*, 2 Ariz.App. 129, 406 P.2d 847 (1965) in interpreting A.R.S. § 32–1152, held:

> "The priority of entitlement to payment out of the sum on deposit is not established by the sequence in which the suits are filed *or by the sequence in which* process has been served. The priority is established by the sequence of judgments. . . . Once the obligation of the contractor to the contractee has been determined in a pending action, the successful party is then in a position to reduce his claim against the State Treasurer to judgment, the only defense which can be offered by the State Treasurer is that the fund has been exhausted by prior judgments. This priority is determined by the date of the entry of the judgments." 2 Ariz.App. at 133, 406 P.2d at 851.

Relying upon this decision, Hartford points out that appellee's judgment was by its own terms limited to the "unexhausted penalty of the bond"; that prior to the time of entry of appellee's judgment, a prior judgment in favor of Mission Bank had been entered (and paid); and *that applying* the priority principles set forth in *Husky v. Lee, supra,* it is entitled to a stay of execution of appellee's subsequent judgment.

In response to Hartford's motion to stay execution, appellee Phoenix Sand & Rock urged that (1) because Hartford had not brought the Mission judgment to the attention of appellee prior to the time of entry of appellee's judgment, Hartford was estopped from asserting the prior exhaustion of the bond, and (2) in any event, Hartford was not entitled to rely on the Mission judgment as constituting a lawful exhaustion of the

bond. The essence of this latter contention was that the Mission judgment was not conclusive and that Phoenix Sand & Rock was entitled to attack that judgment on its merits on the basis that it was erroneous.

After hearing oral argument and considering memoranda and affidavits filed by the parties, the trial judge entered an order denying Hartford's motion to stay execution. The appeal before this Court is from that order.

 The practical effect of the trial court's order denying Hartford's motion to stay execution is to require Hartford to pay appellee's claim, notwithstanding the fact that Hartford had previously paid the full amount of the bond pursuant to a prior judgment. Such a result is contrary to the express policy of A.R.S. § 32–1152 D, which makes the surety liable on successive actions only "until the full amount thereof [the bond] is exhausted." Therefore, we must view the questions urged on this appeal keeping in mind the statutory policy that the surety's liability on its contractor's bond should normally be at an end when the face amount of the bond is exhausted. We now consider appellee's contention that the normal rule should not apply here because Hartford was estopped from asserting the prior exhaustion of the bond.

> "Estoppel is quite generally predicated on conduct which induces another to acquiesce in a transaction, and that other, in reliance thereon, alters his position to his prejudice. It has three elements. First, acts inconsistent with the claim afterwards relied on; second, action by the adverse party on the faith of such conduct; third, injury to the adverse party resulting from the repudiation of such conduct." *Holmes v. Graves,* 83 Ariz. 174, 177, 318 P.2d 354, 356 (1957).

Applying the above principles, the facts do not furnish support for an estoppel here. The conduct of Hartford which Phoenix Sand & Rock relied upon as creating an estoppel was the failure of Hartford's counsel to notify Phoenix Sand & Rock of the prior exhaustion of the bond when Phoenix

Sand & Rock's motion for summary judgment was heard on July 29, 1975.[1]

■ Without question, the better practice would have been for Hartford's counsel to have notified Phoenix Sand & Rock. However, we note that in the trial court Hartford, as the surety, was represented by different counsel in each case. With multiple actions pending, the possibility of the entry of judgment which would impose an aggregate liability on the surety far in excess of the face amount of the bond is apparent, and it was undoubtedly to avoid this very possibility that the limitation to "the unexhausted penalty of the bond" was placed in the Phoenix Sand & Rock judgment. It cannot be argued that this limitation did not clearly put Phoenix Sand & Rock on notice that its judgment might well be without value, the bond having then been exhausted in accordance with *Husky v. Lee, supra,* by the entry of prior judgments. It is therefore difficult to see how Hartford's conduct was inconsistent with its subsequent claim urged in its motion to stay execution that in fact there was a prior judgment which had exhausted the penalty of the bond.

In any event, Phoenix Sand & Rock has failed to show how it has altered its position to its prejudice because of its lack of knowledge of the prior entry of the Mission judgment. If Hartford had filed a motion to dismiss at or prior to the hearing on Phoenix Sand & Rock's motion for summary judgment, any defense to the claim of prior exhaustion which Phoenix Sand & Rock could have raised at that time was still available after judgment at the hearing on Hartford's motion to stay execution. We therefore reject the contention that Hartford was estopped to assert the exhaustion of its bond.[2]

1. The sequence of events leading to the entry of the two judgments was as follows:

 1. Complaints filed:
 (a) March 3, 1975, Phoenix Sand & Rock.
 (b) The record before this Court does not reflect the date of the filing of the Mission Bank complaint against Hartford. However, the cause number indicates that it was filed before the filing of the Phoenix Sand & Rock complaint.

 2. Motion for summary judgment filed:
 (a) April 14, 1975, by Mission.
 (b) May 21, 1975, by Phoenix Sand & Rock.

 3. Motion for summary judgment hearings:
 (a) June 13, 1975, Mission motion argued.
 (b) July 29, 1975, Phoenix Sand & Rock motion argued.

 4. Judgments entered:
 (a) June 16, 1975, Mission.
 (b) August 14, 1975, Phoenix Sand & Rock.

 5. Judgment paid:
 July 1, 1975, Mission judgment paid by Hartford.

 6. Motion to stay execution filed:
 September 10, 1975, by Hartford.

2. For a fact situation justifying the application of the doctrine of estoppel so as to require payment by the surety notwithstanding the prior exhaustion of the bond, *see United States Fidelity & Guaranty Co. v. Baird's Bread Co.,* 17 Ariz.App. 557, 499 P.2d 171 (1972).

We now consider whether the evidence presented concerning the prior entry of the Mission judgment required the granting of Hartford's motion to stay execution. Hartford presented evidence showing that the Mission judgment against it for the full amount of the bond was entered on June 16, 1975. The Phoenix Sand & Rock judgment was entered on August 14, 1975. Applying the priority principles set forth in *Husky v. Lee, supra,* it is clear that Hartford's motion to stay execution should have been granted unless, as further contended by Phoenix Sand & Rock, the Mission judgment was not conclusive evidence of prior exhaustion, but rather could be attacked on the merits by Phoenix Sand & Rock in the motion to stay execution proceedings. Phoenix Sand & Rock contended that the Mission judgment was erroneous on the merits because the Mission judgment against the principal debtor (the contractor) was for money loaned, and did not fall within the statutory coverage of § 32–1152 nor the language of the bond itself. Phoenix Sand & Rock did not present any claim that the Mission judgment against Hartford was entered as a result of bad faith, collusion or fraud on the part of Hartford or its counsel. Rather, its sole contention was that Phoenix Sand & Rock's judgment was entitled to priority if it could show that the Mission Bank judgment was erroneous on the merits.

For the purpose of considering Phoenix Sand & Rock's contention in this regard, we have assumed, without deciding, that the Mission Bank judgment did in fact result from an erroneous application of the law, and that, absent the prior entry of the Mission Bank judgment, the facts of that case would not have legally justified any claim by Hartford that payment to Mission Bank constituted a lawful prior exhaustion of the bond.

Counsel for Hartford characterizes this attempt by Phoenix Sand & Rock to avoid the conclusive evidentiary effect of the Mission Bank judgment as a "collateral attack" on the judgment, and alleges that such an attack cannot be sustained absent a showing of bad faith, collusion or fraud. Phoenix Sand & Rock denies that it is collaterally attacking the judgment, stating that its argument "did not challenge the judgment, but challenged the Hartford's assertion that the bond had been lawfully exhausted according to the provisions of A.R.S. § 32–1152." Semantic nuances aside, it appears clear that in order for Phoenix Sand & Rock to prevail in its challenge to the Hartford claim of a lawful prior exhaustion of the bond, it must attack the validity of the Mission judgment so as to circumvent the priority consequences of *Husky v. Lee, supra.*

Counsel have not cited to this Court, nor has this Court found, any case law authority precisely in point. However, it appears to the Court that the question presented is somewhat analogous to that presented in *Valley Bank v. Malcolm,* 23 Ariz. 395, 204 P. 207 (1922). There, in a creditor's suit, the question presented was the effect to be given to a prior judgment. The court stated:

"In the ordinary creditor's suit a judgment is not only admissible in evidence for the purpose of establishing the plaintiff's debt, but in the absence of fraud or collusion is conclusive, not only upon the parties to it, but other creditors or transferees of the judgment debtor. *Pickett v. Pipkin,* 64 Ala. 520; *Candee v. Lord,* 2 N.Y. 269, 51 Am.Dec. 294; *Swihart v. Shaum,* 24 Ohio St. 432; *Sidensparker v. Sidensparker,* 52 Me. 481, 83 Am.Dec. 527; *Hersey v. Benedict,* 15 Hun (N.Y.), 282.

"By pleadings and proof appellants sought to show that the judgment was erroneous, and that in fact Malcolm had no cause of action. It was error to admit evidence for this purpose, but, since the court found for the plaintiff, the error was harmless. It is probable that, had the original action been defended, the

defendant might have been successful, under the rule laid down in *Valley Bank of Phoenix v. Josten*, 18 Ariz. 365, 161 P. 876, but the judgment when rendered became conclusive evidence that a debt existed and of the amount of such indebtedness." 23 Ariz. at 402–403, 204 P. at 210.

■ This is in accord with the general rule that a creditor whose rights or claims would be injuriously affected by the enforcement of a judgment against his debtor may impeach it by showing a fraud or collusion. *See generally*, 49 C.J.S. Judgments, § 415 p. 820.

■ As we have previously noted, A.R.S. § 32–1152 authorizes the surety to make payments upon written application without the necessity of litigation, and expressly provides that the penalty of the bond is to be reduced to the extent of such payments made in "good faith". *A fortiori*, a surety against whom a judgment has been entered should be able to rely upon that judgment, absent a showing of bad faith, collusion or fraud on the part of the surety. A subsequent claimant whose rights are incidentally affected, should not be able to re-litigate the merits of that judgment so as to impose liability on the surety beyond that contemplated by the statute.

■ Inasmuch as there was no claim made in the trial court that the Mission judgment was the result of bad faith, collusion or fraud on the part of the surety, we hold that the Mission judgment must be considered as conclusive evidence of the prior lawful exhaustion of the surety's bond. The bond having been exhausted, it follows that the trial court erred in denying Hartford's motion to stay execution.

The order of the trial court is reversed and the matter is remanded with directions to enter an order granting Hartford's motion to stay execution.

NELSON, P. J., and FROEB, C. J., concurring.