593 P.2d 948

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, an Illinois
Corporation, Appellant,

v.

Ted PAYNTER and Ada Paynter, his
wife, Appellees.

No. 1 CA–CIV 3820.

Court of Appeals of Arizona,
Division 1,
Department B.

April 10, 1979.

199

Shimmel, Hill, Bishop & Gruender, P.C. by Charles A. Finch, Phoenix, for appellant.

Allen, McClennen & Fels by Robert H. Allen, Phoenix, for appellees.

OPINION

SCHROEDER, Presiding Judge.

This is an action by the appellees, Ted Paynter and Ada Paynter, against State Farm Automobile Insurance Company (State Farm), Appellant, to recover under a judgment previously obtained by Ted Paynter against an insured of State Farm.

The previous judgment was obtained after State Farm refused to defend its insured. The insured admitted liability pursuant to an agreement in which Paynter agreed not to execute against the insured, in exchange for an assignment of the insured's rights in the State Farm insurance policy. In this action, the trial court entered summary judgment in favor of the Paynters and against State Farm, and State Farm appeals.

State Farm's appeal raises several issues challenging the validity of the covenant not to execute, coverage under its policy for the accident, and the trial court's ruling that State Farm is responsible for the full amount of the previous judgment without regard to the limits of State Farm's policy. We hold that the judgment is enforceable against State Farm but only to the extent of its policy limits.

The facts underlying these issues can be briefly summarized. In 1972, State Farm issued an automobile insurance policy to Wayne and Virginia Jones on a truck which they owned. The policy contained coverage up to $50,000. Subsequently, on the afternoon of May 3, 1972, the truck was being used to tow a disabled forklift on a highway near Phoenix. The truck was moving at a slow rate of speed, and the forklift had no flags, signs or flashing devices to warn vehicles approaching from the rear. A young man was perched at the back of the forklift, however, and observed a car, driven by appellee, Ted Paynter, approaching at a rapid rate. The young man attempted to signal him to slow down. Paynter collided with the back of the forklift and suffered serious injuries. He was cited for driving at an unlawful speed and while intoxicated.

Shortly after the accident, Jones notified State Farm and was informed that the policy did not provide coverage for an accident which occurred while the truck was towing a forklift. In March of 1974, Paynter filed a personal injury action against the Joneses alleging negligence in towing the forklift at a minimal speed on a major highway without warning to others. Counsel for Jones transmitted a copy of the complaint to State Farm and requested that State Farm defend the tort action pursuant to the following clause in the insurance policy:

> State Farm . . . [a]grees . . . to defend, with attorneys selected by and compensated by the company, any suit against the insured alleging such bodily injury or property damage and seeking damages which are payable hereunder even if any of the allegations of the suit are groundless, false or fraudulent. . .

State Farm again disavowed coverage and refused to participate in the court proceedings.

Faced with the necessity of litigating the tort action at their own expense, the Joneses entered into an agreement with Paynter similar to the agreement described in *Damron v. Sledge*, 105 Ariz. 151, 460 P.2d 997 (1969). Such agreements have come to be known in this jurisdiction as "Damron Agreements." Pursuant to the agreement, Paynter received $500.00 from Jones and an assignment of the Joneses' rights under the insurance policy. Paynter in return agreed not to execute against Jones on any judgment obtained in the tort action. Jones then admitted liability in a pretrial statement, and a brief trial was held on the damages. The trial court entered judgment against Jones in the amount of $143,956.81. At no time in that action did Jones raise any defense of contributory negligence.

Paynter then instituted this action against State Farm to recover under the judgment. State Farm unsuccessfully challenged the validity of the Damron Agreement and coverage under the policy for the accident. State Farm also urged that in no event should its liability exceed the $50,000

policy limit. The trial court entered summary judgment in favor of Paynter for the full amount of the previous judgment. This appeal followed.

## ALLEGED FRAUD IN OBTAINING THE UNDERLYING TORT JUDGMENT

■ We turn first to the arguments raised by appellant in support of its position that the underlying judgment in favor of Paynter is unenforceable against State Farm by virtue of fraud and collusion. The general rule, accepted by both parties to this appeal, is that, in the absence of fraud or collusion, an insurance company which refuses to defend its insured is bound by a judgment against its insured with respect to all matters which were litigated or could have been litigated in that action. *Lane v. Hartford Fire Insurance Co.*, 343 F.Supp. 79 (E.D.Mo.1972); *Stephenson v. Duriron Co.*, 292 F.Supp. 66 (S.D.Ohio 1968), aff'd, 428 F.2d 387, *cert. denied*, 400 U.S. 943, 91 S.Ct. 245, 27 L.Ed.2d 247 (1970); *Dairyland Insurance Co. v. Richards*, 108 Ariz. 89, 492 P.2d 1196 (1972); *Zander v. Casualty Insurance Co. of California*, 259 Cal.App.2d 793, 66 Cal.Rptr. 561 (1968); 46 C.J.S. Insurance § 1251, 257–259. This rule is grounded upon the broad duty of the insurer to defend claims under policy provisions similar to the clause in the policy issued by State Farm in this case. Under such a clause, the insured is entitled to a defense in any case in which there is coverage under the policy. "A purchaser of liability insurance has a right to expect not only indemnification at the end but also a shield against liability claims at the outset." *Orleans Village v. Union Mutual Fire Insurance Co.*, 133 Vt. 217, 221, 335 A.2d 315, 318 (1975). *See also Bandy v. Avondale Shipyards, Inc.*, 458 F.2d 900 (5th Cir. 1972); *Tucson Public School District No. One v. Home Insurance Co.*, 9 Ariz.App. 233, 451 P.2d 46 (1969); 7 Appelman, *Insurance Law and Practice*, § 4683, and authorities cited therein. By refusing to defend, the insurer takes the risk that it may have erred in determining that the policy did not provide coverage. Having

refused to provide a defense, the insurer is said to have been "vouched in" the action against the insured and is bound by the judgment. In the absence of fraud or collusion, it is not entitled to relitigate the merits of the claim. *Lane v. Hartford Insurance Co., supra.*

The question then becomes whether there was fraud or collusion in connection with the judgment obtained by Paynter in his suit against State Farm's insured. The judgment was, of course, entered after the defendants admitted liability and assigned their rights under the insurance policy to Paynter. The Supreme Court of Arizona, however, has held that an agreement of that nature is not inherently fraudulent as a matter of law. *Damron v. Sledge, supra.* The Court there reasoned that the policy holder who has been abandoned by his insurer should not be forced to litigate the claim at his own expense. The insurance company knew that a judgment might be entered against its insured. If in fact the policy provided coverage, the insurance company should be liable on the judgment. The Court in *Damron* relied heavily upon the California decision in *Critz v. Farmers Insurance Group,* 230 Cal.App.2d 788, 41 Cal.Rptr. 401, 12 A.L.R.3d 1142 (1964).

State Farm argues in this case that there was fraud apart from the assignment of policy rights and covenant not to execute. The alleged fraud is that the plaintiff and the defendant in the underlying personal injury action failed to disclose to the court all of the facts surrounding the accident itself. State Farm emphasizes the failure of its insured to raise any defense of contributory negligence and particularly the failure to disclose Paynter's intoxication at the time of the accident. State Farm also stresses that the parties did not disclose that a person was riding on the back of defendants' forklift presumably to warn traffic approaching from the rear. In essence, appellant argues that Paynter and its insured permitted the trial court to enter judgment in favor of Paynter upon a misunderstanding of the true facts, and that this conduct amounted to fraudulent collusion precluding enforcement of the judgment against State Farm.

We have carefully reviewed the authorities cited to us by both sides concerning the type of fraudulent and collusive conduct which might bar enforcement of a judgment against the defendant's insurer. We are not persuaded that the conduct here met that standard. The net effect of the defendant's actions in this case was to permit a judgment to be entered without litigating a potential defense. State Farm's argument that the defendant should have raised all matters relating to a potential defense is tantamount to a contention that the insured was required to offer vigorous defense at his own expense after his insurer had breached its contractual obligation to provide such a defense. This contention flies in the face of *Damron v. Sledge, supra,* holding that an abandoned insured may enter into a reasonable agreement limiting his liability in order to avoid litigation of the claim at his own expense.

State Farm has cited several cases in which the courts have, on grounds of fraud, refused to enforce a judgment against an insurer. Those cases, however, involved conduct of a very different nature than that presented here. Generally they involved collusion by the plaintiff and the insured with respect to the institution of the lawsuit in an effort to defraud the insurance company. Thus, for example, in *Venditti v. Mucciaroni,* 54 Ohio App. 513, 8 N.E.2d 460 (1936), the plaintiff and the defendant fraudulently procured the insurance policy and arranged a sham accident as part of an elaborate scheme to defraud the insurer. In *Renschler v. Pizano,* 329 Pa. 249, 198 A. 33 (1938), the insured first assisted the plaintiff in amending a complaint in order to invoke coverage under the insurance policy, and then failed to give the insurance company notice of the amended complaint. In *Bertinelli v. Galoni,* 331 Pa. 73, 200 A. 58 (1938), an insurance company was permitted to attack a judgment against its insured when it learned that the insured was the plaintiff's father and chief witness and would enjoy a benefit from plaintiff's recovery. In *State Farm Mutual Automo-*

*bile Insurance Co. v. Shelton,* 368 S.W.2d 734 (Ky.App.1963), the court permitted collateral attack by the insurer on the ground that the complaint had, through collusion of the defendant insured, misrepresented the identity of the driver of the automobile.

■ In this case it is not urged that there was any fraud or collusion in connection with Paynter's bringing the tort action in the first place. Nor is it suggested that State Farm's insured, Jones, had any interest other than minimizing his loss. In those circumstances, we hold that the insurance company is not entitled to attack the judgment on the grounds of fraud.

■ State Farm nevertheless makes a further argument that even if the facts actually developed in the case did not indicate any fraud, State Farm was prematurely cut off from discovery which might have developed such facts. State Farm contends that the trial court granted the appellees' motion for summary judgment before Ted Paynter had answered certain questions and before the court had ruled upon a disputed attempt to obtain discovery from Paynter's attorneys. While it is true that a party is entitled to make reasonable discovery efforts, we find no error in this instance. The questions remaining to be answered by Paynter concerned his alleged contributory negligence. He had already provided substantial information relating to his intoxication and in view of our conclusion that State Farm was not entitled to relitigate the contributory negligence issue, further discovery could not have affected the outcome. Our review of the record also reveals that the trial court denied State Farm's attempts to obtain further discovery from Paynter's attorneys. State Farm raised this issue in a motion which was taken under advisement along with the respective motions for summary judgment and was expressly denied in the judgment entered in favor of Paynter. At the time summary judgment was entered, the case had been pending seventeen months. The trial court did not abuse its discretion in refusing further discovery.

■ State Farm's final attack on the underlying judgment is that it should be deemed invalid because the parties failed to disclose the existence of the Damron Agreement itself to State Farm or the trial court. This lack of disclosure does not mandate a reversal and allow State Farm to litigate, at this late date, what it was contractually bound to litigate in the first place. We do not accept State Farm's argument that a contrary result is required by our Supreme Court's decision in *Mustang Equipment v. Welch,* 115 Ariz. 206, 564 P.2d 895 (1977).[1] There the Court was considering an agreement similar to that in *City of Tucson v. Gallagher,* 108 Ariz. 140, 493 P.2d 1197 (1972). The Court held that an agreement between the plaintiff and only one of two defendants should have been disclosed to the other defendant. The Court emphasized that it might often be unfair for a litigant to participate in litigation while under a serious misapprehension about the true motivations of the other parties.

These considerations are less compelling in a case that does not involve multiple defendants. No litigant in the Paynter-Jones' tort action was misled by the failure to disclose the agreement. State Farm had been afforded ample opportunity to control the defense of its insured but chose not to on the basis of its interpretation of the policy. Its ultimate liability on that judgment should depend on whether it was correct in its view that there was no coverage under the policy.

There also was an apparent failure to disclose the agreement in this case to the court. We believe it would certainly have been better practice to advise the trial court of the existence of the Damron Agreement, particularly in order to insure the trial court's fair scrutiny of damages. In this case, however, Paynter presented evidence at the hearing in support of his claim for

1. That decision was issued after Paynter had obtained the tort judgment against State Farm's insured.

damages in excess of $400,000. The trial court entered judgment in favor of Paynter in the amount of $143,956.81. Therefore State Farm has not been prejudiced by the trial court's determination of damages. Our holding today reduces State Farm's liability to the policy limit of $50,000. We find no reversible error in the failure to disclose the agreement to State Farm and the trial court.

## STATE FARM'S OBLIGATION TO PAY

In the covenant not to execute, Paynter agreed "not to execute or seek to collect against Covenantees or their agents personally, in any manner whatever, upon any judgment . . ." That agreement also contained the following language:

IT IS HEREBY EXPRESSLY UNDERSTOOD AND AGREED that these presents may be pleaded by Covenantees only in bar of all proceedings whatsoever to enforce such judgment against Covenantees personally in breach of this Covenant.

. . . . .

IT IS HEREBY EXPRESSLY UNDERSTOOD AND AGREED that this instrument is not intended as a release or discharge of, nor is in accord and satisfaction with, any person whomsoever, but only as a covenant to execute and to the effect that Covenantees hereby purchase peace and hereby are given peace upon any judgment which may be had against said Covenantees by the undersigned Covenantors.

State Farm argues that under the terms of the policy it is only obligated to pay a judgment which its insured is legally obligated to pay and that the covenant not to execute renders the judgment one which its insured is not legally obligated to pay. Paynter responds that by its terms the covenant is not a release from liability and that the authorities relied upon by State Farm represent the minority view of jurisdictions which disapprove Damron-type covenants.

We agree with Paynter that were we to sustain State Farm's position in this regard we would wholly undermine the purpose of such agreements, and our holding would be inconsistent with our Supreme Court's approval of them in *Damron v. Sledge, supra*. Division Two of this Court has squarely held that the covenant not to execute is not a release which would permit the insurer to escape its obligations. *Globe Indemnity Co. v. Blomfield*, 115 Ariz. 5, 562 P.2d 1372 (App.1977). We find no reason to depart from that holding here.

## COVERAGE UNDER THE POLICY

State Farm's original reason for declining to participate in the underlying tort litigation was its view that the policy did not provide coverage for this accident. The parties agree that in this action against State Farm on the underlying judgment, State Farm is entitled to litigate the question of policy coverage since that question could not have been litigated in the negligence action filed by Paynter against State Farm's insured.

The issue before us is a question of law. State Farm argues that under the provisions of the policy, there was only limited coverage for the insured Jones' vehicle while being used for towing purposes. The accident occurred while the insured vehicle was towing a forklift, and State Farm's position is that the policy clearly and unambiguously excluded coverage under such circumstances.

The policy provisions involved are the following:

EXCLUSIONS—Section 1

This insurance does not apply under: . . . (C) Coverages A, B, and Division 2 of coverages C and M, while the owned motor vehicle is used for the towing of any trailer (other than a trailer as defined herein) owned or hired by the insured and not covered by like insurance in the company; or while any trailer covered by this policy is used with any motor vehicle owned or hired by the insured and not covered by like insurance in the company;

Trailer—means a trailer or a semitrailer not so described if designed for use with a private passenger automobile and if not (1) a passenger trailer, (2) a trailer used for business purposes with other than a private passenger automobile, or (3) a trailer used as premises for office, store, or display purposes.

We understand State Farm's interpretation of those provisions to be that the disabled forklift was a "trailer" within the meaning of the first paragraph quoted above, but it was not a "trailer" as defined in the second paragraph, and that therefore the policy excluded coverage. Our difficulty with State Farm's position is that we fail to see how the word "trailer" in the exclusionary provision of the first paragraph can clearly and unambiguously be interpreted to include a forklift. In our view, the provisions are a model of obscurity. Had the company wished to exclude coverage of vehicles while towing disabled vehicles and machinery, it could have done so. It did not. At the very least, the language is ambiguous, and we must apply the well established rule that in the event of ambiguity, the policy is to be construed against the insurer. *Ranger Insurance Co. v. Lamppa*, 115 Ariz. 124, 563 P.2d 923 (App. 1977); *State Farm Mutual Automobile Insurance Co. v. O'Brien*, 24 Ariz.App. 18, 535 P.2d 46 (1975). This rule applies with even greater force where the ambiguity appears in an exclusionary clause. *Brenner v. Aetna Insurance Co.*, 8 Ariz.App. 272, 445 P.2d 474 (1968). We hold there was coverage under the policy.

### STATE FARM'S LIABILITY BEYOND THE POLICY LIMITS

The trial court entered summary judgment in favor of Paynter and against State Farm in the amount of $143,956.81, representing the full amount of the judgment obtained by Paynter in the tort action. State Farm argues that the judgment should be modified to $50,000 since that was the limit of coverage under the policy. We agree.

As has been discussed above in connection with the other issues raised in this appeal, an insurance carrier acts at its peril when it declines to represent an insured, for in the absence of fraud or collusion, it will be bound by the judgment if there is coverage under the policy. The general rule, however, is that such a refusal to defend in and of itself does not expose the insurance carrier to greater liability than that contractually provided in the policy. Appellee Paynter has not cited any cases to us in which the court has held an insurer liable for an amount in excess of the policy limits in the absence of proof that there was, in addition to the refusal to defend, a refusal to entertain an offer of settlement.

The rule is stated in *Mannheimer Bros. v. Kansas Casualty & Surety Co.*, 149 Minn. 482, 184 N.W. 189 (1921):

The question presented by plaintiff's appeal is whether the extent of the liability of defendant is that named and fixed by the contract, or whether, since defendant breached the contract, repudiating liability and refusing to defend the action as required by the policy, the limitations of the contract disappear rendering defendant liable for the full amount of plaintiff's loss. We answer the question adversely to plaintiff's contention that the liability is general and to the full amount of the Hillstrom judgment. . . . This limitation is unambiguous and free from doubt and cannot be added to without making a new contract for the parties. The question presented is controlled by the general rule that the measure of damages for the breach of a contract for the payment of money is the amount agreed to be paid with interest. The fact in this case that defendant's obligations under the contract extended beyond the payment of the amounts stated and included the promise to conduct the defense of the action cannot be held to enlarge the limitation as to the amount fixed as reimbursement for injuries to persons. The failure to defend exposed defendant only to the additional liability for the cost and expense which plaintiff was put to by reason of defendant's breach of the con-

tract in that respect. That breach clearly did not create any greater liability on the facts here disclosed. 149 Minn. at 486, 184 N.W. at 191.

The rule was recognized by the California Supreme Court in *Communale v. Traders & General Insurance Co.,* 50 Cal.2d 654, 328 P.2d 198 (1958), upon which Paynter inappropriately relies. The Court there stressed that the decisive factor in extending liability beyond the policy limit was not the refusal to defend, but the refusal to accept an offer of settlement within the policy limits. State Farm never refused such an offer. In these circumstances, State Farm's liability stemming from its refusal to defend the action should be confined to the limits of the policy. The amount of the judgment against State Farm should be modified to $50,000.

Affirmed as modified.

OGG, C. J., and JACOBSON, J., concurring.