980 P.2d 495

**Mark C. CUNNINGHAM and Wendy A. Cunningham, husband and wife, Plaintiffs/Appellees/Cross–Appellants,**

v.

**GOETTL AIR CONDITIONING, INC., an Arizona corporation, Defendant/Appellant/Cross–Appellee.**

**No. 1 CA–CV 96–0233.**

Court of Appeals of Arizona, Division 1, Department B.

Oct. 16, 1997.

As Amended Oct. 24, 1997.

Review Granted Sept. 15, 1998.

The Ranger Law Firm by Edward M. Ranger, Scottsdale, and Lewis and Roca L.L.P. by Susan M. Freeman, Phoenix, for Appellees/Cross–Appellants.

Jones, Skelton & Hochuli by William Schrank, Eileen J. Dennis, Phoenix, for Appellant/Cross–Appellee.

## OPINION

EHRLICH, Judge.

Goettl Air Conditioning appeals from the trial court's decision to hold Goettl liable to indemnify Mark and Wendy Cunningham. The Cunninghams, in turn, are the assignees of Washington Street Limited Partnership ("WSI") for a $250,000 judgment entered in an underlying lawsuit for bodily injury. The Cunninghams cross-appeal from the amount of the attorneys' fees granted them by the court. For the reasons which follow, we reverse the judgment and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

### A. The Tort Lawsuit

Goettl employee Mark Cunningham was injured when he fell through a skylight on the roof of a building Goettl was leasing from WSI. As a Goettl employee, Cunningham received workers' compensation benefits. Thus prohibited from suing Goettl by the workers' compensation laws, ARIZ.REV.STAT. ANN. ("A.R.S.") § 23–801 et seq., the Cunninghams filed a personal injury lawsuit against WSI. A.R.S. § 23–1023. WSI, in response, tendered the defense of the lawsuit to Goettl on the basis of an indemnity agreement between the companies. Goettl refused the defense, however, insisting that it was not responsible for Mark Cunningham's mishap.

The Cunninghams won summary judgment against WSI on liability. An ensuing settlement assigned to the Cunninghams any rights WSI possessed to seek indemnity from Goettl.

WSI also provided the Cunninghams $90,-000. While the Cunninghams now characterize this as a loan, the WSI–Cunningham agreement stated that this money would be repaid only in the event that the Cunninghams received in excess of $99,999.99 from the indemnity suit against Goettl. Further, WSI reserved the right to reject any proposed settlement of the Cunninghams' claim against Goettl. In exchange, the Cunninghams agreed to dismiss their claims against WSI with prejudice, and they entered a covenant with WSI not to execute on the judgment.

The trial court then was presented with a judgment for $250,000, as stipulated by the Cunninghams and WSI. It was signed by the court and the Cunninghams' lawsuit against WSI was dismissed with prejudice.

### B. The Indemnity Lawsuit

The Cunninghams, as assignees of WSI's claimed right to indemnification from Goettl, sued Goettl to recover the $250,000 judgment. Both parties moved for summary

judgment on the issue of Goettl's liability as governed by its lease with WSI. The trial court denied the motions, finding questions of fact.

The parties again moved for summary judgment, stipulating that the trial court could treat the issues as matters of law. The court granted the Cunninghams' motion, ruling that Goettl was required to indemnify WSI pursuant to the lease. It also concluded that Mark Cunningham's injury was due to Goettl's active negligence, not WSI's passive negligence.[1]

The parties then moved for summary judgment on the amount of indemnification: Goettl claimed the $90,000 figure in the agreement and the Cunninghams argued for the $250,000 judgment. The trial court concluded that Goettl not only had failed to present any evidence of fraud or collusion, it had declined to contest the Cunninghams' evidence of special damages "greatly in excess of the amount of the judgment of $250,-000." It ruled that Goettl was obligated to pay the amount of the judgment.

The trial court also awarded the Cunninghams $30,000 for WSI's fees in defending the personal injury suit and $100,000 for fees for prosecution of the indemnity claim, plus costs and statutory interest. Final judgment against Goettl was entered in the amount of $457,273.79.

Goettl asks this court to vacate the judgment against it. The Cunninghams on cross-appeal claim that the amount of fees granted to them is insufficient. However, the dispositive issues are whether the trial court erred in analyzing the Cunningham–WSI agreement as a *Damron* agreement and whether it erred in granting the Cunninghams summary judgment on the issue of indemnification.

### DISCUSSION

#### A. Damron Agreement

Goettl charges that the trial court erred in considering the Cunningham–WSI agreement as comparable to a *Damron* agreement. This mischaracterization, Goettl contends, resulted in the court's erroneous conclusion that Goettl must indemnify WSI's assignees, the Cunninghams.

A *Damron* agreement is one initiated when an insurer refuses to defend a policyholder in a lawsuit. Faced with the risk of personal liability, the policyholder/defendant settles the case for a specific amount and assigns to the plaintiff whatever claims the policyholder has against the insurer for failing to defend the lawsuit. In consideration, the plaintiff enters a covenant not to execute against the policyholder. *Damron v. Sledge*, 105 Ariz. 151, 460 P.2d 997 (1969). The court's rationale for allowing a defendant whose insurer has left him "high and dry" to effect a prejudgment assignment and covenant not to execute upon the judgment came from *Critz v. Farmers Ins. Group*, 230 Cal. App.2d 788, 41 Cal.Rptr. 401 (App.1965):

> When the insurer breaches its obligation of good faith settlement, it exposes its policyholder to the sharp thrust of personal liability. At that point, there is an acute change in the relationship between policyholder and insurer. The change does not or should not affect the policyholder's obligation to appear as defendant to testify to the truth. He need not indulge in financial masochism, however. Whatever may be his obligation to the carrier, it does not demand that he bare his breast to the continued danger of personal liability. By executing the assignment, he attempts only to shield himself from the danger to which the company has exposed him.

*Id.* at 153, 460 P.2d at 999.

In a *Damron* agreement, a policyholder may settle with a claimant only if the insurer first has breached a contractual duty to the policyholder. 105 Ariz. 151, 460 P.2d 997; *see Arizona Property and Casualty Ins. Guar. Fund v. Helme*, 153 Ariz. 129, 735 P.2d 451 (1987); *State Farm Mutual Auto. Ins. Co. v. Paynter*, 122 Ariz. 198, 200–01, 593

---

1. Paragraph 7.2, the pertinent indemnity provision of the lease between WSI and Goettl, states:
Lessee agrees to indemnify, hold harmless, and defend Lessor against all liability, cost, and expense (including without limitation any fines, penalties, judgment, litigation costs and attorneys' fees) incurred by Lessor as a result of Lessee's breach of the foregoing obligations, . . . .

P.2d 948, 950–51 (App.1979). On the other hand, if an insurer performs its contractual obligation to defend the policyholder against any claim potentially covered by the policy, the policyholder must cooperate and aid the insurer in the defense. *United Services Auto. Ass'n v. Morris*, 154 Ariz. 113, 117, 741 P.2d 246, 250 (1987). By defending a claim, an insurer "obtains the advantage of exclusively controlling the litigation. This control allows the insurer to obtain a fair adjudication of its liability and to protect itself against the possibility of an insured colluding with the injured party to the prejudice of the insurer." *Id.*, citing 7C J. APPLEMAN, INSURANCE LAW AND PRACTICE § 4681 at 2–4 (1979). In this context, a policyholder defended by its insurer under a "reservation of rights"[2] can enter a *Damron* agreement without breaching the policy's cooperation clause if the agreement is "made fairly, with notice to the insurer, and without fraud or collusion on the insurer." *Id.* at 119, 741 P.2d at 252.

■ There are at least three reasons why the Cunningham/WSI agreement is not a *Damron* agreement. First, the purpose of a *Damron* agreement is to protect a policyholder's personal assets when the insurer has deserted the policyholder. That is not an issue in this case. For WSI to tender its defense to Goettl upon its reading of the indemnity clause in their lease agreement does not make Goettl the insurer of WSI's liability.

A second and related reason is that the extent of the obligation to indemnify was never litigated between WSI and Goettl. *Damron* assumes that an insurer already has breached its duty to defend and its obligation of a good-faith settlement. Indeed, providing for an effective settlement mechanism in the wake of the insurer's breach of those duties is central to the purpose of a *Damron* agreement. Again, in this case, Goettl is not WSI's insurer. The fact that Goettl refused WSI's tender of defense does not preclude Goettl from mounting a defense that is based on the nature of the lease agreement. Goettl

was a party neither to the Cunningham–WSI settlement nor the negotiation for a stipulated judgment.

Third, *Damron* and its progeny such as *Helme*, 153 Ariz. 129, 735 P.2d 451, and *Paynter*, 122 Ariz. 198, 593 P.2d 948, contain no pay-back provisions to the policyholder/assignor from the assignee. In contrast, the terms of the Cunningham/WSI agreement have pay-back provisions. Specifically, the terms of the settlement agreement provided that WSI would provide the Cunninghams $90,000 to pursue their litigation against Goettl. The Cunninghams agreed to repay WSI that amount if they recovered more than $99,999.99 from Goettl. If the Cunninghams received over $250,000 from Goettl, they would repay WSI $90,000 plus WSI's attorneys' fees and costs incurred in defending against the Cunninghams' claim. Although the agreement considered recovery from Goettl in amounts over $250,000, WSI and the Cunninghams agreed to cap recovery at $250,000. The pay-back provision thus provided that WSI had a financial stake in the outcome of any claim made by the Cunninghams against Goettl.

The trial court erred as a matter of law when it characterized the Cunningham–WSI agreement as a *Damron* agreement.

### B. Indemnification

Goettl argues that the trial court also erred in the following respects: granting the Cunninghams' summary judgment on the issue of indemnification because there were triable issues of fact about which party was responsible for as well as negligent in maintaining the roof, failing to decide that the Cunningham–WSI agreement was fraudulent and collusive in nature, and not considering whether WSI defended the tort action with due diligence. We agree that granting the Cunninghams summary judgment on the issue of indemnification was not justified.

*Continental Casualty Co. v. Signal Insurance Co.*, 119 Ariz. 234, 238, 580 P.2d 372, 376 (App. 1978).

---

**2.** In essence, a "reservation of rights" is a situation in which a policyholder's insurance company performs its duty to defend the policyholder but reserves the right to deny the duty to pay.

### 1. Triable Issues of Fact

Summary judgment will be affirmed if there is no issue of material fact in dispute and if the moving party is entitled to judgment as a matter of law. *Orme School v. Reeves,* 166 Ariz. 301, 802 P.2d 1000 (1990). On appeal, the facts are viewed most favorably to the party opposing the motion for summary judgment, Goettl in this case. *Ammer v. Arizona Water Company,* 169 Ariz. 205, 818 P.2d 190 (App.1991); *see also, Benevides v. Arizona Prop. & Cas. Ins. Co.,* 184 Ariz. 610, 911 P.2d 616 (App.1995).

The Cunninghams allege that, during the term of the lease, Goettl made alterations to the property which included the installation of the skylight through which Mark Cunningham fell. Goettl responds that WSI was actively negligent in failing to maintain the roof in a safe condition.

> Generally, active negligence is found if an indemnitee has personally participated in an affirmative act of negligence, was connected with negligent acts or omissions by knowledge or acquiescence, or has failed to perform a precise duty which the indemnitee had agreed to perform. On the other hand, passive negligence is found in mere nonfeasance, such as the failure to discover a dangerous condition, perform a duty imposed by law, or take adequate precautions against certain hazards inherent in employment. [Citations omitted.]

*Estes Co. v. Aztec Constr.,* 139 Ariz. 166, 169, 677 P.2d 939, 942 (App.1983).

The trial court determined that WSI was passively negligent. It concluded that Goettl had created the hazardous situation and, thus, was actively negligent, stating, "[n]o one has offered any evidence that [WSI] had any knowledge of the condition." It thereupon decided that Goettl had a contractual obligation to indemnify WSI in the tort lawsuit. Goettl disputes that it was the actively negligent party.

■ Ordinarily a finding of active negligence bars indemnification under the terms of a general indemnity agreement. *Washington Elem. Sch. District No. 6 v. Baglino Corp.,* 169 Ariz. 58, 61, 817 P.2d 3, 6 (1991); *Estes,* 139 Ariz. at 169, 677 P.2d at 942.

"[U]nless an indemnity contract expresses in clear and unequivocal terms the intentions of the indemnitor to indemnify for losses caused by the indemnitee's own active negligence, there is no right to indemnity for such acts." *Superior Companies v. Kaiser Cement Corp.,* 152 Ariz. 575, 577, 733 P.2d 1158, 1160 (App. 1986); *see also Washington Elem.,* 169 Ariz. at 61, 817 P.2d at 6. Indemnification contracts are construed to cover those losses or liabilities which appear to have been reasonably intended by the parties. *Id.* Any doubt as to the meaning of an express indemnification provision is resolved in favor of the indemnitee. *INA Ins. Co. of North America v. Valley Forge Ins. Co.,* 150 Ariz. 248, 252, 722 P.2d 975, 979 (App.1986).

■ Goettl maintains that its agreement with WSI cannot be read to hold it liable for indemnification when WSI was required to make all necessary repairs to the exterior walls and to the roof of the premises. Paragraph 11 of the lease agreement provides that Goettl, as Lessee, agrees:

> to indemnify and hold Lessor harmless from and defend Lessor against any and all claims, liabilities, penalties, costs, expenses (including attorneys' fees), demands, and causes of action arising out of or in connection with (a) any accident or other occurrence in or about Premises, when such injury or damage shall be caused in part or in whole by the act, neglect, fault of or omission of any duty with respect to the same by Lessee, its agents, representatives, employees, guests, contractors, or invitees, (b) the condition of, or any defect in, the Premises or any part thereof or any improvements thereon, (c) the condition of, or any defect in, Lessee's fixtures or equipment or any part thereof, (d) the use or occupancy of the Premises by Lessee or any invitee or licensee of Lessee, (e) any breach of this lease by Lessee, or (f) any act or negligence of Lessee, or any of its agents, representatives, employees, invitees, guests or contractors.

During the tort lawsuit, evidence was adduced by the Cunninghams that a 1986 engineering inspection recommended to WSI would have disclosed the dangerous condi-

tions of the skylights but the inspection was not done. Goettl claims that, since the Cunninghams showed with this evidence that WSI had "knowingly" maintained its premises in a negligent manner, the Cunninghams cannot now dispute WSI's active negligence in the indemnity suit.

We agree with Goettl that there are issues of material fact as to whether WSI or Goettl was actively negligent in failing to maintain the skylight through which Mark Cunningham fell.

### 2. Fraud and Collusion

■ Goettl contends that it is not bound by the $250,000 judgment between WSI and the Cunninghams because the judgment was procured through bad faith, collusion and fraud. *Gilbert v. Bd. of Medical Examiners*, 155 Ariz. 169, 745 P.2d 617 (App.1987); *see also Hartford Accident & Indemnity Co. v. Phoenix Sand & Rock*, 116 Ariz. 366, 569 P.2d 308 (App.1977). It claims that its refusal to defend WSI was valid and that it was never apprised of WSI's settlement discussions or the possibility of a *"Damron"* agreement with a stipulated judgment against it. Such behavior, Goettl charges, provides evidence that the Cunningham–WSI agreement was fraudulent and collusive. The Cunninghams respond that their agreement with WSI was valid since Goettl was given notice of the suit and opted not to defend WSI.

If WSI is found in subsequent proceedings to have been actively negligent, then Goettl will not be liable to WSI. If WSI is found to be only passively negligent and Goettl thus is liable to indemnify WSI, then Goettl would not be liable to WSI for any more than that amount of damages for which WSI would be liable to the Cunninghams. However, there are no genuine issues of material fact with respect to whether the Cunningham–WSI agreement was the product of collusion; the agreement is clear as to its intent and incentives and we hold for Goettl on the issue. *See State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696 (Tex.1996); *H.S.M. Acquisitions v. West*, 917 S.W.2d 872 (Tex.1996).

### C. Attorneys' Fees

The award of trial attorneys' fees and costs to the Cunninghams is vacated.

Goettl's request for attorneys' fees on appeal is denied without prejudice to applying for those fees in the trial court if it ultimately prevails. Its request for costs is granted upon compliance with ARIZ. R. CIV.APP. P. 21.

### CONCLUSION

This case is reversed and remanded to the trial court for proceedings consistent with this decision.

NOYES, P.J., and GERBER, J., concur.