705 P.2d 1352

**Donald R. ROBERTS and Elsie Roberts, husband and wife, Plaintiffs-Appellants,**

v.

**STATE FARM FIRE AND CASUALTY COMPANY, an Illinois corporation, Defendant-Appellee.**

No. 1 CA–CIV 6362.

Court of Appeals of Arizona, Division 1, Department C.

March 7, 1985.

Patten, Montague & Arnett by Wayne C. Arnett, Tempe, for plaintiffs-appellants.

Stinson & Douglas, P.A. by William G. Stinson, Phoenix, for defendant-appellee.

OPINION

EUBANK, Judge.

The issue in this appeal is whether the trial court erred in granting summary judgment in favor of appellee, State Farm Fire

and Casualty Company (State Farm), and against appellants, Donald R. Roberts and Elsie Roberts, husband and wife (Roberts) in a suit for coverage in an insurance contract. We affirm.

On February 12, 1979, State Farm issued a homeowners insurance policy to the Roberts. This policy was in full force and effect when, in May of 1980, honey bees built a hive and deposited honey in the attic of the Roberts' home.

In late May the Roberts noticed bees throughout their home, which they traced to the attic. They then had them exterminated. Within a few days after the extermination of the bees, honey began dripping from the attic into the dining room. For several months the honey continued to seep out of the hive and to cause damage to the Roberts' home.

The Roberts timely filed a claim with State Farm for physical loss under their homeowners policy. The claimed loss included the cost of tearing out and replacing an area of the Roberts' roof in order to remove the beehive and honey residue from the attic and ceiling, and the cost of cleaning the honey stains from their carpeting.

After State Farm denied coverage, the Roberts filed an action alleging breach of contract and bad faith with respect to the insurance contract.[1] State Farm answered denying coverage. After some discovery, the Roberts moved for partial summary judgment and State Farm moved for summary judgment with respect to all matters. A hearing was held and the trial court denied the Roberts' motion for partial summary judgment and granted State Farm's motion for summary judgment. This appeal followed.

The policy in question contains the following provision.

COVERAGE A—DWELLING

We insure for all risks of physical loss to the property described in Coverage A *except for loss caused by:*

\* \* \* \* \* \*

6. wear and tear; marring; deterioration; inherent vice; latent defect; mechanical breakdown; rust; mold; wet or dry rot; contamination; smog; smoke from agricultural smudging or industrial operations; settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings; birds, vermin, rodents, *insects* or domestic animals. If any of these cause water to escape from a plumbing, heating or air conditioning system or household appliance, we cover loss caused by the water. We also cover the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.

*Any ensuing loss from items 1 through 6 not excluded is covered.*

(Emphasis added).

Both sides agree that the Roberts' home was damaged by honey seepage. The only question presented here is whether that loss is covered by the policy. More specifically, the Roberts maintain that even though item 6 excludes loss caused by insects, honey seepage is not damage caused by insects. The Roberts do not dispute that bees are insects but rather focus on the language immediately following item 6, which states that, "[a]ny ensuing loss from items 1 through 6 not excluded is covered." The Roberts acknowledge that damage done directly by the bees would be excluded by item 6, but insist that honey seepage would be an "ensuing loss."

■ Since the phrase "ensuing loss" is not defined in the policy, "ensuing loss" will be defined in the common sense terms of the average layman. *Malanga v. Royal Indemnity Co.*, 101 Ariz. 588, 422 P.2d 704 (1967). According to *Webster's Third New International Dictionary* 756 (1969), the word "ensue" has been defined to mean "to take place afterward.... to follow as a

---

1. The complaint contained five counts: one (breach of duty of good faith and fair dealing); two (declaratory relief); four (common law fraud); five (unfair insurance practice); and six (misrepresentation of policy). There was no count three. However, basic to all of these counts is the question of coverage.

chance, likely, or necessary consequence: RESULT.... to follow in chronological succession." *See also Aetna Insurance Co. v. Getchell Steel Treating Co.*, 395 F.2d 12, 16 (8th Cir.1968) ("to follow as a chance, likely or necessary consequence: to take place afterwards"). Both parties agree with this definition of "ensue" and both parties agree that a "loss" occurred here.

The Roberts argue that their loss was an "ensuing loss," because the honey seepage was a resultant consequence of and took place after the bees were exterminated. State Farm answers that the damage to the Roberts home was not an "ensuing loss" but merely damage caused by insects, and thus within the policy exclusion. After analyzing what limited authority there is available on "ensuing losses," we agree with State Farm. The Roberts' argument confuses direct and indirect causes with preceding and ensuing causes.

The Texas standard homeowner's policy contains an "ensuing loss" provision which has been the subject of litigation.[2]

In *McKool v. Reliance Ins. Co.*, 386 S.W.2d 344 (Tex.Civ.App.1965), the Texas court was faced with a situation where freezing temperatures froze the water in a swimming pool, which caused chipping and cracking of the ceramic tile on the pool's walls. While the parties admitted that the insurance policy excluded losses caused by "cracking" or "extremes of temperature," the insured argued that the loss was covered by a clause stating that all ensuing losses caused by water damage were covered.

The court interpreted "ensuing losses" according to its ordinary meaning, and defined the term as "losses which follow or come afterwards as a consequence." The court then found the ensuing loss provision inapplicable to the facts presented, but hypothesized a situation where the provision would apply:

> In other words, the tile having cracked because of the extreme cold or ice, there could be no recovery therefor [because

the exclusion directly applied], but if water had entered through the cracks thus caused, the ensuing damage caused by the entry of the water would be recoverable. That would be a loss caused by water damage ensuing after the uninsured cracking of the tile.

386 S.W.2d at 345–346.

In *Lambros v. Standard Fire Ins. Co.*, 530 S.W.2d 138 (Tex.Civ.App.1975), the Texas court again addressed the "ensuing loss" provision. The homeowner's building had collapsed due to groundwater pressures. The policy specifically excluded losses caused by settling or cracking, but again provided that all ensuing losses caused by water damage were covered.

The court, citing *McKool*, defined "ensuing loss" as "a loss which follows as a consequence of some *preceding* event or circumstance." (Emphasis added.) 530 S.W.2d at 141. The court found that since the underground water damage was the cause rather than the consequence of the settling of the home's foundation, it was not an "ensuing loss." The court said:

> Assuming that plaintiffs' loss resulted from the action or presence of water beneath the surface, it nevertheless cannot be contended that such loss was an "ensuing loss" caused by water damage. Such a conclusion would involve "a backward application of the ensuing loss exception." Gollaher, *op. cit.* 24 Sw.L.J. at 651. Such a construction, in effect, reads "ensuing" out of the exception. If we give to the language of the exception its ordinary meaning, we must conclude that an ensuing loss caused by water damage is a loss caused by water damage where the water damage itself is the result of a preceding cause. What is the preceding cause which gives to the exception the effect of taking the ensuing loss out of the reach of exception k [excluding losses caused by cracking]? Again, the plain language of the exception compels the conclusion that the water damage must be a consequence, i.e.,

---

2. For a discussion of cases interpreting this clause, *see* Gollaher, *The 1960 Texas Standard*

*Homeowners Policy*, 24 S.W.L.J. 636, 651–654 (1970); Annot., 78 A.L.R.3d 950 (1977).

follow from or be the result of the types of damage enumerated in exception k. "Ensuing loss caused by water damage" refers to water damage which is the result, rather than the cause, of "settling, cracking, bulging, shrinkage, or expansion of foundations, walls, floors, ceilings...." Since the evidence in this case, even when viewed in the light most favorable to plaintiffs, conclusively establishes that water damage was the cause, rather than the consequence, of settling, etc., exclusion k is applicable. See *Park v. Hanover Ins. Co.*, 443 S.W.2d 940, 942 (Tex.Civ.App.—Amarillo 1969, no writ).

530 S.W.2d 141–142.

The analyses by the Texas courts thus consists of three elements: a preceding cause (a *crack* in the foundation), a second or ensuing cause (water entering the crack), and an ensuing loss (the resultant physical damage due to operation of the second or ensuing cause).

The Texas cases illustrate that the second cause is not of the same nature as, and is distinguishable from, the preceding cause and the ensuing loss would not have happened but for the operation of the second cause. Put another way: the preceding cause was an event (excluded from policy coverage) which created the opportunity for a second cause (included in coverage) to operate[3] (which it would not have been able to do absent the preceding cause) and proximately cause the damage. The resultant damage is then an "ensuing loss."

A distinction must also be drawn between preceding and ensuing causes, which can operate to create an "ensuing loss," and direct and indirect causes (also proximate and incidental causes) which *cannot* give rise to an ensuing loss.

In *Wheeler v. Phenix Ins. Co.*, 203 N.Y. 283, 96 N.E. 452 (1911), a policy insured against all fire loss, but exempted the carrier from liability for loss caused directly or

indirectly by explosion of any kind, "unless fire ensues, and, in that event, for the damage by fire only." The court held that the language did not exclude the company from liability for damage caused by an explosion which is preceded by and caused by the fire. The exception was meant to apply to the situation where there is an explosion (a preceding cause) from which a fire (an ensuing cause) ensues or follows, and not to the situation where there is a hostile fire on the insured's premises (the proximate cause of the damage) which causes an explosion (which is merely an incidental cause). In the former case the company is not liable; in the latter it is liable because the explosion was a part of the fire and as such was covered by the general language of the policy. *See also* Couch on Insurance 2d (Rev.ed. 1982) § 42:535; Annot., 82 A.L.R.2d 1125 (1962); 43 Am.Jur.2d *Insurance* § 477 (1982).

From these cases we can draw the following legal principles which would allow an "ensuing loss" to be covered:

(1) The actual physical loss is not caused by an excluded source (insects), and

(2) The physical loss is caused by some other source which in turn is the result or consequence of the presence of insects, and

(3) The "some other cause" is, itself, not an excluded source.

Applying these principles to the facts here, it is clear that the actual physical damage suffered by the Roberts was honey, this in turn was caused by insects. Therefore, the loss is caused by an excluded source and no coverage is available. The Roberts argue that the "loss" *caused* by the honey is an "ensuing loss." However, it is not ensuing *causes* which are excluded, rather it is a loss caused by some source other than the insects which is covered, provided that that source was the result or consequence of the insects' presence.

---

**3.** One court has held, however, that the second cause need *not* be a *consequence* of the preceding cause, that it can merely follow *chronologically*. *Goldner v. Otsego Mut. Fire Ins. Co.*, 39 A.D.2d 440, 336 N.Y.S.2d 717 (1972) (holding also that the damage proximately caused by the second cause was an ensuing loss).

Two hypothetical situations exemplify this principle. First, the bees create the honey which in turn seeps into the carpeting of the house. The presence of the honey attracts a bear which breaks into the house and damages the carpet in an attempt to retrieve the honey. The resulting physical loss is a loss not caused by the bees. The loss results from a source other than the bees (the bear) and that loss was a result of the presence of the bees. Since bears (wild animals) are not themselves excluded, the loss is covered. Note, however, that while the loss to the carpet caused by the bear is covered, any loss attributable to the honey itself would not be covered as it is a loss caused by the bees and not another source.

Using the same hypothetical instead of a bear being attracted by the honey, rodents do the damage. In such a case, although the rodents would qualify as "some other source" which caused an ensuing loss, since a loss caused by rodents themselves is excluded, the resulting loss would not be covered.

■ We conclude that, based on the facts presented to the trial court in support of the cross-motions for summary judgment the damage to the Roberts' residence was caused by the activities of the bees. While the effect of those activities was felt after the death of the bees, the bees were the only direct cause of the "loss" in the instant case. Consequently, the honey seepage damage was not an "ensuing loss" and item 6, which excluded coverage, was therefore applicable.

Judgment affirmed.

JACOBSON, C.J., concurs.

CORCORAN, Judge, dissenting.

I respectfully dissent.

The majority concludes that because there was not a causal agent equivalent to water or a wild animal, there is no "second or ensuing cause." The initial danger from the bees involved stings and their presence. These problems were eliminated by the extermination. The bees left. The second problem, which ensued, was dripping honey.

The court's enunciation of three legal principles which would specify when an "ensuing loss" would be covered incorrectly restricts coverage in my view. The court holds that only losses "caused by some other source" are covered. This position denies coverage absent a new event. The better view is presented in *Wheeler v. Phenix Ins. Co.*, 203 N.Y. 283, 96 N.E. 452 (1911) in which the New York high court recognized that the effects of an explosion were not covered but that any subsequent fire damage would be covered because " 'fire ensues' should be read as meaning 'unless fire follows or comes after or as a consequence of the explosion.' " 203 N.Y. at 287, 96 N.E. at 454. That is, there is no need for an independent agent action; explosions cause fires and bees make honey— both are ensuing events and both should be covered.

Finally, the majority's interpretation of an arguably ambiguous term is not unreasonable nor implausible. We are bound, however, by the rule of strictly construing exclusions in an insurance contract in favor of the insured and coverage, and against the insurer. *Mission Ins. Co. v. Nethers*, 119 Ariz. 405, 581 P.2d 250 (App.1978). This rule applies with even greater force where the ambiguity appears in an exclusionary clause. *State Farm Mut. Auto. Ins. Co. v. Paynter*, 122 Ariz. 198, 593 P.2d 948 (App.1979).

I doubt that the three legal principles enunciated by the majority to amplify the policy words "ensuing loss" can be attributed to the "average layman" as definitional "common sense terms."

I would reverse the summary judgment.