705 P.2d 1335
**Donald R. ROBERTS and Elsie Roberts, husband and wife, Plaintiffs-Appellants,**

v.

**STATE FARM FIRE AND CASUALTY COMPANY, an Illinois corporation, Defendant-Appellee.**

**No. 18093–PR.**

Supreme Court of Arizona, En Banc.

Aug. 27, 1985.

Patten, Montague & Arnett by Wayne C. Arnett, Tempe, for plaintiffs-appellants.

Stinson & Douglas by William G. Stinson, Phoenix, for defendant-appellee.

HAYS, Justice.

Donald R. Roberts and his wife Elsie (hereinafter Roberts) brought an action against their insurer, State Farm Fire and Casualty (hereinafter State Farm), for damages to their home allegedly covered by their insurance policy. The trial court found that Roberts' policy did not cover the type of damage complained of and granted State Farm's motion for summary judgment. The Court of Appeals affirmed the trial court's decision, *Roberts v. State Farm,* 146 Ariz. 301, 705 P.2d 1352 (1985), and Roberts petitioned this court for review. We have jurisdiction. Ariz. Const. art. 6, § 5(3) and 17A A.R.S. Civil Appellate Proc. Rules, Rule 23.

We address only one issue:

Does an insurance policy that excludes damage done by insects cover, through an "ensuing loss" provision, damage done after the insects are exterminated by the leakage of honey from their hive?

### FACTS

In late May of 1980, Roberts began finding live honeybees inside their home. A few days after this discovery, Roberts noticed that a swarm of the insects had formed on their roof. Apparently the bees had made their way through the roof and were constructing a hive in Roberts' attic. A beekeeper was consulted but due to the

inaccessible location of the hive, he could not extract the queen and thereby draw off the swarm. Instead, he recommended extermination.

A few days after the bees were dispatched, Roberts noticed honey dripping into their dining room. At first, this drip confined itself to one location, but gradually it began to spread and eventually encompassed the entire room. Apparently, after the bees were exterminated, the hive began to leak.

Roberts contacted their insurer, State Farm, and a representative told them to get estimates. Eventually, however, State Farm denied coverage, claiming that the damage was caused by insects and specifically excluded from Roberts' policy.

## ENSUING LOSS

The relevant portion of Roberts' policy read as follows:

> We insure for *all risks* of physical loss to the property described in Coverage A *except for loss caused by*:
>
> . . . .
>
> 6. wear and tear; marring; deterioration; inherent vice; latent defect; mechanical breakdown; rust; mold; wet or dry rot; contamination; smog; smoke from agricultural smudging or industrial operations; settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings; birds, vermin, rodents, *insects* or domestic animals. If any of these cause water to escape from a plumbing, heating or air conditioning system or household appliance, we cover loss caused by the water. We also cover the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.
>
> *Any ensuing loss* from items 1 through 6 not excluded is covered (emphasis added).

State Farm contends that the damage to Roberts' home was due to insects and clearly excluded from coverage by the terms of the policy. Roberts, on the other

hand, maintain that the loss was not due to insects, but due to the absence of insects. They claim that after the bees were exterminated the hive began to melt and only then did the honey seepage begin. They therefore conclude that this was an "ensuing loss" from insects covered through the ensuing loss provision of their policy. They concede that the actual damage done by the bees themselves, *i.e.*, the cost of tearing out hive and accompanying repairs is not covered. They dispute, however, that the damage to their dining room is not covered.

In their petition for review, Roberts argue that the terms of their policy are ambiguous and as such should be construed against their insurer. *See State Farm Mut. Auto. Ins. Co. v. Paynter*, 122 Ariz. 198, 204, 593 P.2d 948, 954 (App.1979) (ambiguity in policy construed against insurer). State Farm responds, claiming that Roberts have never raised this argument before nor pointed to which term "they feel to be ambiguous." State Farm does not inform us as to what conclusions we are to draw from this assertion. We gather, however, State Farm wishes to raise a waiver argument: those arguments not raised in the trial court are waived if raised for the first time on appeal from a summary judgment. *See Crook v. Anderson*, 115 Ariz. 402, 403–04, 565 P.2d 908, 909–10 (App. 1977).

We disagree with what we take to be State Farm's assertion. Throughout this litigation Roberts have proposed definitions for the word "ensue" and have cited cases dealing with ambiguous policies. In their motion for partial summary judgment, Roberts stated "[i]f the Court somehow finds that the policy is ambiguous, it must apply [the] well established rule that in the event of ambiguity, an insurance policy is to be construed in favor of the insured and against the insurer (citations omitted)." Roberts did not waive their ambiguity argument.

We start out with the proposition that ambiguous terms in a contract of insurance are to be strictly construed in favor of the insured and coverage, and

against the insurer. *State Farm Mut. Auto. Ins. Co. v. Paynter*, 122 Ariz. at 204, 593 P.2d at 954; *Mission Insurance Co. v. Nethers*, 119 Ariz. 405, 408, 581 P.2d 250, 253 (App.1978); *Brenner v. Aetna Insurance Co.*, 8 Ariz.App. 272, 276, 445 P.2d 474, 478 (1968). In this context, if an insurer wishes to limit its liability, it must employ language in the policy which clearly and distinctly communicates to the insured the nature of the limitation. *Sparks v. Republic Nat. Life Ins. Co.*, 132 Ariz. 529, 535, 647 P.2d 1127, 1133, *cert. denied*, 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632 (1982). The principle of strict construction applies, however, only after the contested language of the policy has been determined to be ambiguous. *Hampton v. Allstate Ins. Co.*, 126 Ariz. 403, 405, 616 P.2d 78, 80 (App.1980). It applies, however, with even greater force where the ambiguity appears in an exclusionary clause. *State Farm Mut. Auto. Ins. Co. v. Paynter*, 122 Ariz. at 204, 593 P.2d at 954. Whether or not a contract of insurance is ambiguous is purely a question of law. *Rodemich v. State Farm Mut. Auto. Ins. Co.*, 130 Ariz. 538, 539, 637 P.2d 748, 749 (App.1981); *State Farm Fire & Casualty Co. v. Rossini*, 107 Ariz. 561, 564, 490 P.2d 567, 570 (1971). An ambiguity exists when the language of the policy is unclear and could be construed in more than one sense. *Sparks v. Republic Nat. Life Ins. Co.*, 132 Ariz. at 534, 647 P.2d at 1132.

With this law in mind, we return to Roberts' policy. We note that the term "ensuing loss" is nowhere defined in the policy. Both parties have agreed, however, that the word "ensuing" means "to take place afterward ... to follow as a chance, likely, or necessary consequence: RESULT ... to follow in chronological succession." *See Roberts v. State Farm*, 146 Ariz. at 302, 705 P.2d at 1353; Webster's Third New International Dictionary, 756 (1969) defini-

tion of the word "ensue"). We note that this definition of "ensue" is not without precedent. *See Aetna Insurance Co. v. Getchell Steel Treating Co.*, 395 F.2d 12, 16 (8th Cir.1968) ("to follow as a chance, likely or necessary consequence: to take place afterwards"). Both parties have also agreed on the meaning of certain other language within the policy: both agree that bees are insects and both agree that a loss occurred. *See Roberts v. State Farm, supra*, 146 Ariz. at 302–303, 705 P.2d at 1353–1354. With these agreements in mind, we focus on the disputed provision. In shortened form, it reads:

We insure for all risks of physical loss to the property ... except for loss caused by:

. . . .

6. ... [bees]. ...

Any ... loss [taking place afterward or following as a chance, likely, or necessary consequence] from ... [bees] ... not excluded is covered.

■ We do not believe this language is ambiguous. It cannot be construed in more than one sense. The plain import of this language is that the loss, due to honey seepage, is an ensuing loss and is *covered* by the policy, unless one of the other various exclusions applies. Unless, for example, the honey seepage caused "marring" or "settling" or any one of the numerous other exclusions. It was error for the trial court to dismiss Roberts' suit.

Opinion of the Court of Appeals is vacated. Reversed and remanded for further proceedings consistent with this opinion.

HOLOHAN, C.J., GORDON, V.C.J., and CAMERON and FELDMAN, JJ., concur.