895 P.2d 1025

STATE of Arizona, DEPARTMENT OF ADMINISTRATIVE RISK MANAGEMENT DIVISION, Plaintiff–Appellee,

v.

UNIVERSITY PHYSICIANS, INC., Defendant–Appellant.

No. 1 CA–CV 94–0143.

Court of Appeals of Arizona, Division 1, Department C.

Dec. 13, 1994.

Review Granted May 23, 1995.

 

provided by Arizona Revised Statutes Annotated ("A.R.S.") section 41–621 (Supp.1993) is not "occurrence coverage" as that term is used in the insurance industry. We disagree and reverse the trial court's ruling.

## FACTS AND PROCEDURAL HISTORY

University Physicians, Inc. ("UPI") is a nonprofit corporation formed in 1984. UPI employs physicians ("Physicians") who provide health care services to the public. Physicians also are employed by the State of Arizona Board of Regents to teach and to conduct research as faculty of the University of Arizona College of Medicine.

As employees of the Board of Regents, Physicians are provided liability insurance coverage pursuant to A.R.S. sections 41–621 to –625 (1992 & Supp.1993) when acting as state employees.[1] Until July 1, 1993, Physicians also were provided liability insurance coverage for acts or omissions in providing health care services to the public even though they were not acting as state employees.

Prior to the formation of UPI, many of the physicians who ultimately made up UPI and the University Medical Center ("UMC") were part of the University of Arizona College of Medicine. In 1975, the State of Arizona, Risk Management Division ("Risk Management") took out an insurance policy that provided coverage for any "occurrence" which gave rise to a malpractice claim against any University physician.[2] In 1984 UMC decided to leave the state insurance program and form its own nonprofit corporation to purchase malpractice insurance. Risk Management continued all coverage for acts and omissions that occurred prior to UMC's

Wilenchik & Bartness by Dennis I. Wilenchik, Deborah J. Lotstein, Phoenix, for plaintiff-appellee.

Lewis and Roca by John P. Frank, Kathryn E. Underwood, Bryan Cave by Marshall W. Anstandig, Gregg H. Temple, Robin Perin, Phoenix, for defendant-appellant.

## OPINION

VOSS, Judge.

This appeal arises out of the trial court's finding that the liability insurance coverage

---

1. In this case, Physicians are acting as state employees when they teach or conduct research. They are acting in a private capacity when performing clinical duties for the public.

2. This is "occurrence coverage" which means that once a premium is paid, the insured is covered for any act or omission occurring during the year for which the premium was paid, no matter when the claim is made or resolved. This means that the insured need not be concerned about payment for a claim filed after leaving the insurance company (tail claim), if the claim

arises from any occurrence during the time premiums were paid. *See Travelers Indem. Co. v. Mutual Ins. Co.*, 152 Ariz. 267, 731 P.2d 632 (App.1986).

Occurrence coverage is distinguished from "claims made coverage." In claims made coverage, the insured is only covered for claims filed during the year for which the premium is paid. Upon terminating the relationship with the insurance company, the insured must pay extra for insurance coverage of claims filed after leaving ("tail coverage").

departure, not requiring UMC to pay tail coverage.

In 1985, Risk Management extended this same occurrence coverage to UPI. Risk Management provided Physicians with malpractice coverage for their public and private clinical activities "under the provisions of A.R.S. § 41–621." James Mullen, former Risk Manager, and Betsey Bayless, former Director of the Department of Administration, determined that Physicians fell within the statutory definition of "such others as may be necessary to accomplish the functions or business of the state" and that covering Physicians in their private clinical practice was in the "best interest of the state." A.R.S. § 41–621(A)(3).

The extent of UPI coverage arose again in 1990 when the state insurance program was under reconsideration. At that time Risk Management agreed to continue coverage for Physicians who were also state employees; however, Risk Management discontinued coverage to Physicians' staff at this time.

UPI's coverage was confirmed in writing by Risk Management in 1992. Risk Management sent a letter to UPI accountants, Ernst & Young, specifying that coverage "is essentially, 'occurrence' which does not require tail coverage." Also in 1992, Risk Management gave a Certificate of Insurance to the Veterans' Administration, advising it that UPI was insured on a "medical occurrence basis."

In 1993, UPI notified Risk Management that on July 1, 1993, it would withdraw from the state's insurance program, and it would insure its risk of liability for acts or omissions in providing health care services through its own captive insurance company, CADUCEUS.[3] UPI also informed Risk Management that because it was withdrawing from the state insurance program, it would not pay the 1994 fiscal year premium due July 1, 1993.

In response, Risk Management stated that if the 1994 premium was not paid, it was no longer responsible for any pending or future claims relating to incidents occurring before July 1, 1993.[4] UPI protested, contending that because the statutory coverage for which it paid was occurrence coverage, it included liability coverage for acts or omissions during the time that Physicians were insured under the state insurance program regardless of when the claims are filed. UPI demanded that Risk Management continue to provide indemnification, defense, and claims handling for those acts or omissions arising out of the time period in which UPI was insured by the state program.[5]

Risk Management filed a declaratory relief action, asking the court to declare that it be held not responsible for the continuing and future defense of all claims against Physicians that relate to acts or omissions arising out of their private clinical activities conducted prior to July 1, 1993. Following a hearing, the court entered judgment in favor of Risk Management. The trial court found that the risk coverage was a creature of statute and that it was not occurrence coverage. It held that "[r]isk coverage is to be provided by plaintiff [Risk Management] only for years where coverage is provided by an assessment or premium is paid. That does not include a free (or prepaid) 'tail'." UPI timely appealed.

### ISSUES

UPI raises the following issues on appeal:

1. Whether Risk Management provided occurrence coverage to UPI, as that term is used in the private insurance industry, such that when UPI made its annual premium payments for fiscal years 1986 to 1993, it was purchasing coverage for liability for acts or omissions occurring during the years for which it paid.

---

3. The liability of Physicians for acts or omissions as employees of the Board of Regents remains with the state insurance program.

4. Risk Management contends that UPI must pay tail coverage to the state if UPI wishes Risk Management to cover these claims.

5. Pursuant to the state insurance program, participants receive claims handling services, A.R.S. § 41–622(A), defense of lawsuits by the Attorney General or outside counsel, A.R.S. § 41–621(L), and indemnification for settlements and judgments, A.R.S. § 41–621(M).

2. Whether Risk Management was free to abandon all ongoing and future litigation over claims which assert liability for acts or omissions that occurred during the years for which UPI paid for insurance.

## STANDARD OF REVIEW

We conduct a de novo review of the interpretation of the statutes at issue. *Blum v. State,* 171 Ariz. 201, 204, 829 P.2d 1247, 1250 (App.1992).

## DISCUSSION

■ UPI contends that as a participant in the state insurance program, it was provided with the equivalent of occurrence coverage. This means that upon its withdrawal from the program, the state maintains full responsibility for the coverage and defense of Physicians' acts and omissions which occurred during the years UPI participated in the program. Therefore, no future or "tail" payment is required by UPI to ensure this coverage. Risk Management contends that it is not a private insurance carrier, and that it does not afford participants occurrence coverage as that term is defined in the private insurance industry. Risk Management contends that the program is actually a risk pool in which non-state agency participants "pay as they go," with coverage beginning only after payments are made for the upcoming fiscal year. We agree with UPI that the program, as it applies to UPI, was intended to operate as occurrence coverage.

### A. A.R.S. section 41–621(A)(3)

The coverage of the state insurance program is defined in A.R.S. section 41–621(A)(3). That statute provides that the Department of Administration is required to obtain insurance for its agencies, employees, "and such others as may be necessary to accomplish the functions or business of the state ... *against liability for acts or omissions of any nature while acting ... in the course and scope of their employment....*" A.R.S. § 41–621(A)(3).

### 1. Case Law

The statutory insurance coverage provided to UPI was for "liability for acts or omis-sions." This language closely parallels the definition of occurrence coverage in the private insurance industry. This court has addressed the scope of occurrence coverage in *Travelers Indemnity Co. v. Mutual Insurance Co.,* 152 Ariz. 267, 731 P.2d 632 (App. 1986). In *Travelers,* a doctor committed medical malpractice, injuring a patient. At the time of the incident, the doctor was insured by Travelers under a policy that provided coverage for "injuries arising out of the rendering of or failure to render, during the policy period, professional services...." *Id.* at 268, 731 P.2d at 633. The patient filed a lawsuit more than five years after the coverage with Travelers expired. The court held that Travelers' policy applied because "[i]t is an 'occurrence' policy which protects the policy holder from liability for any act done while the policy is in effect." *Id.*

The language in the statutory coverage at issue here and the court's description of occurrence coverage in *Travelers* are virtually identical: A.R.S. section 41–621(A)(3) provides coverage against *"liability for acts or omissions"* while the court in *Travelers* described occurrence coverage as "liability for any act." *Travelers,* 152 Ariz. at 268, 731 P.2d at 633.

### 2. Statutory Interpretation

Risk Management contends that the statutes are clear. It argues, "They do not so much as hint that the coverage provided pursuant to the Program is 'occurrence coverage' as the term is used in the private insurance industry." Risk Management argues that because the words "occurrence coverage" do not appear in the statute, that type of coverage was not extended to UPI. We disagree.

If Risk Management's argument applies, it cuts both ways. Risk Management asserts the type of coverage purchased by UPI was actually a "shared risk pool" or "pay as you go" plan. These terms do not appear in the statute either.

■ The type of coverage need not be expressly stated in the statute. However "if an insurer wishes to limit its liability, it must employ language in the policy which clearly

and distinctly communicates to the insured the nature of the limitation." *Roberts v. State Farm Fire & Casualty Co.,* 146 Ariz. 284, 286, 705 P.2d 1335, 1337 (1985). In the private insurance industry, where the policy provision may be subject to more than one reasonable interpretation, the interpretation favoring the insured is adopted. *Ranger Ins. Co. v. Lamppa,* 115 Ariz. 124, 563 P.2d 923 (App.1977). Construction of ambiguities in favor of the insured applies with even greater force where the ambiguity appears in an exclusionary clause. *Sparks v. Republic Nat'l Life Ins. Co.,* 132 Ariz. 529, 535, 647 P.2d 1127, 1133, *cert. denied,* 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632 (1982) (holding insurer must pay for losses resulting from injuries incurred while insurance in effect because policy did not clearly and expressly set forth the nature of the limitation on coverage); *see e.g. State Farm Mut. Auto Ins. Co. v. Paynter,* 122 Ariz. 198, 204, 593 P.2d 948, 954 (App.1979); *Mission Ins. Co. v. Nethers,* 119 Ariz. 405, 407–08, 581 P.2d 250, 252–53 (App.1978) (holding that when applying California law an explicit, clear, and unequivocal written endorsement can change an insurance contract from occurrence policy). Here, the words "liability for acts and omissions" appear in the grant of coverage, and in the private insurance industry this language indicates occurrence coverage. *See Travelers,* 152 Ariz. 267, 731 P.2d 632.

### 3. Representations of Occurrence Coverage

UPI argues that Risk Management explicitly represented to UPI and others that UPI maintained occurrence coverage. Further, it was only when UPI decided to leave the state insurance program that Risk Management withdrew from this position, declaring that UPI had neither occurrence coverage nor claims-made coverage. Risk Management now asserts that these alleged representations of occurrence coverage were misconstrued and taken out of context.

Upon entering the state insurance program, James Mullen, then Risk Manager, informed UPI that it would be receiving an occurrence program and that it would never have to pay a tail if it left the program. This position was reaffirmed by Risk Management on April 30, 1992, when Risk Management gave a Certificate of Insurance to the Veterans' Administration, advising it that UPI was insured on a "medical occurrence basis." Again, on August 14, 1992, when Risk Management wrote to UPI accountants, Ernst & Young, in response to an audit concerning the malpractice and liability coverage provided to UPI, Risk Management specified that "[c]overage is essentially 'occurrence' type which does not require tail coverage."

Although Mullen testified that UPI possessed occurrence coverage, Risk Management argues that his testimony was belied by the evidence or lack of evidence. According to Risk Management, no specific document from Mullen or any other administrator ever apprised UPI that it had occurrence coverage and that if UPI chose to leave the program, the state would pay for tail coverage. Furthermore, Alicia Sterna, current Risk Manager, testified that no document ever addressed whether the state would pick up the tail coverage, and in her opinion, UPI did not purchase occurrence coverage.

Risk Management further contends that the representations made to Ernst & Young and the Veterans' Administration are not proof that UPI was receiving occurrence coverage. Risk Management states that these were merely responses to a specific request for the type of coverage provided to *individual Physicians* leaving the program to seek employment elsewhere. Risk Management is wrong. The letter to Ernst & Young and the certificate to the Veterans' Administration are explicit and deal with the liability coverage for UPI, not Physicians individually.

### B. A.R.S. section 41–622(D)

▪ Both parties concede that the state insurance program is funded on an annual basis. A.R.S. § 41–622(D). Risk Management contends that because the program is funded in this manner, the program is designed to collect and cover only those losses and expenses to be paid during each fiscal year. If a fiscal year premium is not paid, then the losses for that year will not be

covered. This is Risk Management's so called "pay as you go" plan.

As proof that the program was intended to provide coverage only during years in which an allocation is paid, Risk Management cites A.R.S. section 41–622(D) which provides in part:

> Those entities or persons insured under the provisions of this chapter that are not state agencies, departments, boards, commissions or employees or that do not receive funding from state sources shall pay the amount required by risk management to the permanent risk management revolving fund ... *before the coverage begins.*

This statute was amended to add the above italicized language in response to *State v. Pima County Adult Probation Department ("Acevedo"),* 147 Ariz. 146, 708 P.2d 1337 (App.1985), in which the court held that Pima County adult probation officers were state employees, and therefore must be covered by the state insurance program, even though their salaries may be subsidized by the county. Risk Management contends therefore, that the amendment to A.R.S. section 41–622(D) was added to clarify that all non-state entities insured by the state insurance program (such as UPI) must pay the required assessed amount *each year* to trigger Risk Management's responsibility for continuing coverage and defense for the acts or omissions of their employees. Therefore, Risk Management contends, if the insured chooses to leave the program and fails to pay the premium for the fiscal year, Risk Management is freed from all obligations no matter what the insured paid for in the past. The trial court agreed that the "[r]isk coverage is to be provided by plaintiff only for years where coverage is provided by an assessment or premium is paid."

The issue of coverage is distinct from the issue of funding. See A.R.S. §§ 41–621(A)(3), –622(D). Coverage, pursuant to A.R.S. section 41–621, provides for protection against liability for acts or omissions. Funding is maintained by A.R.S. section 41–622(D). An amendment to A.R.S. section 41–622(D) does not eliminate the acts and omissions coverage provided in A.R.S. section 41–621 and turn it into a pay-as-you-go system.

UPI paid for insurance coverage for acts and omissions in fiscal years 1986 to 1993. If we accept Risk Management's interpretation of A.R.S. section 41–622(D), this would nullify the coverage UPI paid for in the last eight years. *Acevedo* and the amendment to the statute that followed were not intended to create such a result. The amendment was designed to fill a gap in the statute, requiring new insureds to pay for what they are getting. Both parties agree that an entity should not receive the benefits of insurance without first paying for them. Here, UPI paid its premiums until July 1, 1993; therefore it fulfilled its obligation pursuant to A.R.S. section 41–622(D) and paid "before the coverage began." The insurance for which UPI paid for fiscal years 1986 to 1993 included any acts and omissions that occurred during those years. The amendment was necessary for those entities that were newly added to the state insurance program, receiving coverage under the *Acevedo* ruling without ever having paid a premium before the occurrence coverage began. The amended language is inapplicable to the situation here because UPI paid its premiums before the coverage began, and the amendment does not change the insurance coverage purchased by UPI.

Legislative history provides further support that occurrence coverage was intended. In 1982, the legislature altered the method by which the state insurance program was to be funded. The statute previously provided that funds were to be supplied on the basis of "projected needs for the following fiscal year." The statute was revised so that funds would be supplied "based on the actuarial needs for the liability losses...."[6] The legislative intent for this amendment can be derived from the Minutes of the Arizona State Senate Committee on Government. The fact sheet attached to the minutes indicates that by this amendment the legislature intended to ensure that funding "would be

---

6. The current version also bases the budget request on the actuarial needs for liability losses.

*See* A.R.S. § 41–622(D) (1992).

based on actuarial needs of lawsuits and claims *in the future regardless of whether their completion is contemplated within the following fiscal year....*" Arizona State Senate Comm. on Government, Fact Sheet for S.B. 1337 (1982).

Risk Management extended the state-provided insurance to UPI because Risk Management determined that such action was in the "best interests of the state." Risk Management did this extension even though Physicians were not acting as state employees and could leave the program at any time. Risk Management wedged UPI into a system that did not contemplate an entity leaving the state insurance program, and now Risk Management does not like the financial results when this occurs. The negative financial results described by Risk Management do not influence our interpretation of the statutes. Because Risk Management authorized Physicians to participate in the state insurance program, Risk Management must endure the consequences. The statutes mandate occurrence coverage, and Risk Management must provide coverage in compliance with the statutes.

### CONCLUSION

The state insurance program, pursuant to A.R.S. sections 41–621 to –625, provides participants with insurance coverage for liability for acts and omissions. In each of the eight fiscal years that UPI purchased insurance from Risk Management, UPI paid the premium before the coverage for the year's acts and omissions began. Having paid for coverage for liability arising out of the acts and omissions for eight years, UPI is entitled to receive claims services, defense, and indemnification for those acts and omissions no matter when the claims are made. Risk Management was not free to abandon ongoing and future litigation for claims which assert liability for occurrences during the years for which UPI paid for insurance.

For the foregoing reasons we reverse the trial court's ruling and remand.

### ATTORNEYS' FEES

Both parties request attorneys' fees pursuant to A.R.S. section 12–341.01 (1992). Be-

cause this case arises out of a contract, and UPI is the successful party on appeal, we grant UPI's request for attorneys' fees and deny Risk Management's request for attorneys' fees.

EHRLICH, P.J., and WEISBERG, J., concur.