**Shirley COOPER, Plaintiff,**

v.

**AMERICAN FAMILY MUTUAL IN-SURANCE COMPANY, a Wisconsin corporation; John and Jane Does I—X, ABC Corporations I–X, XYZ Partnerships I–X, Defendants.**

No. 00–1097–PHX–JAT.

United States District Court,
D. Arizona.

Jan. 25, 2002.

Leon Joseph Brandriet, Leon J. Brandriet PC, Douglas F. Dieker, Craig M. Voightmann, Dieker & Voightmann PC, Phoenix, AZ, for plaintiff.

Carl F. Mariano, Lynn Allen Wiysel, Christian & Mariano, Phoenix, AZ, for defendants.

## ORDER

TEILBORG, District Judge.

Pending before this Court are Defendant's Motion for Summary Judgment (Doc. # 28), Plaintiff's Cross Motion for Summary Judgment Re: Coverage (Doc. # 43), Defendant's Motion to Strike Hearsay Report and Lay Opinions (Doc. # 50) and Defendant's Motion to Strike Intervener[']s Citations to the FC & S Bulletins (Doc. # 82). Plaintiff in *Majdanski, et al. v. American Family Mutual Insurance Company, et al.,* Case No. CIV 00–420 PHX–JAT filed a motion to intervene for the limited purpose of filing a response and sur-reply to Defendant's Motion for Summary Judgment in this case. The Court granted Majdanski's ("Intervener") motion; therefore, the Court will also take into consideration Majdanski's Intervener Brief Regarding Coverage for Mold Damage and for Toxic Pollutants Produced By Mold (Doc. # 68). Also pending is Plaintiff's Motion to Continue Discovery Deadline (Doc. # 83).

Defendant American Family Mutual Insurance Company ("American Family") issued a homeowners policy which insured Plaintiff Shirley Cooper's residence. Plaintiff reported a plumbing leak on February 21, 2001, which damaged dry wall and flooring in the master bedroom and hall closet. American Family paid Plaintiff for repairs to the drywall and flooring, but denied coverage for damage caused by mold. Plaintiff sued American Family claiming that the leak also caused mold damage in her residence and sought to have American Family pay for mold remediation.

## I. MOTION FOR SUMMARY JUDGMENT

### A. Summary Judgement Standard

Under Fed.R.Civ.P. 56(c), the Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Judgment for

the moving party must be entered "if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "If reasonable minds could differ as to the import of the evidence," judgment should not be entered in favor of the moving party. *Id.* at 250–51, 106 S.Ct. 2505.

The moving party bears the initial burden of identifying the elements of the claim that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.,* 677 F.2d 1301, 1306 (9th Cir.1982). The burden then shifts to the non-moving party to establish that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. More than a "metaphysical doubt" is required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### B. Exclusion From Covered Loss

The American Family policy, Section I, "Perils Insured Against," covers "risks of accidental physical loss ... unless the loss is excluded in this policy." The policy describes the particular losses not covered:

> We do not cover loss to the property described in Coverage A—Dwelling and Dwelling Extension resulting directly or indirectly from or caused by one or more of the following. *Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.*
>
> \*　　\*　　\*　　\*　　\*　　\*

6. **Other Causes of Loss:**

> \*　　\*　　\*　　\*　　\*　　\*
>
> c. smog, rust, corrosion, frost, condensation, mold, wet or dry rot ...
>
> However, **we** do cover any *resulting loss* to property described in Coverage A—Dwelling and Dwelling Extension from items 2 through 8 above, not excluded or excepted in this policy.

(emphasis added)

Plaintiff claims that because water damage is a covered loss, under the "efficient proximate cause" rule, the resulting mold from the introduction of water is also covered. As such, Plaintiff contends American Family is liable for the mold remediation as well as the damage to personal property due to the mold growth and additional living expenses incurred during the mold remediation period. To the contrary, American Family contends that Plaintiff's alleged damages were caused by mold, and because the policy excludes coverage for mold regardless of the cause, Plaintiff's claim was properly denied.

■■■ Courts that have applied the "efficient proximate cause" rule conclude that coverage exists when the insured can identify an insured peril as the proximate cause of the loss even if subsequent or concurrent events are specifically excluded from coverage. *See, e.g., Bowers v. Farmers Ins. Exch.,* 99 Wash.App. 41, 47–48, 991 P.2d 734, 738 (Wash.Ct.App.2000). However, Arizona has not adopted the "efficient proximate cause" rule and as such, an insurer is permitted to limit its liability with a concurrent causation lead-in clause similar to that found in the American Family policy. *See Millar v. State Farm Fire & Cas. Co.,* 167 Ariz. 93, 97, 804 P.2d 822, 826 (Ariz.Ct.App.1990). Accordingly, there is no coverage for losses caused by mold, even though a covered water event may have also contributed to the loss.

Arguing a variation of Plaintiff's theory, Intervener asserts that the mold is not a separate *cause of loss,* but instead is *resulting loss* caused by the plumbing leak, a covered event. Intervener contends that because Plaintiff filed a claim for loss resulting from a covered *accidental* event, all ensuing loss, including mold, should be covered under the resulting loss provision.

In support of the *cause of loss* and *resulting loss* distinction, Intervener suggests that the "Other Causes of Loss" exclusion enumerates nonfortuitous causes of loss which are not covered, but when loss such as mold is the result of a fortuitous cause such as a plumbing leak, the resulting damage is covered. To demonstrate, Intervener argues that if, as American Family contends, the other listed causes of loss such as "marring," "scratching," "deterioration," "cracking" and "bulging" are also excluded regardless of the event causing such loss, then the damage normally associated with a catastrophic fire, for example, would not be covered. To avoid the obliteration of protection for covered fortuitous events, Intervener urges this Court to interpret the "Other Causes of Loss" exclusion to preclude coverage only when the loss occurs independent from a covered fortuitous event.

However, Intervener seeks to interject a distinction into the policy that does not exist. Nowhere in the policy does American Family distinguish between fortuitous and nonfortuitous causes of loss.[1] While American Family excludes loss from "wear and tear" and other damage that may occur over time, the policy does not restrict the mold exclusion to mold resulting from nonfortuitous causes. Indeed, the policy expressly excludes coverage for loss caused by mold without limitation.

■ An insurer may limit its liability by imposing conditions and restrictions as long as those restrictions are not contrary to public policy. *Id.* at 95–96, 804 P.2d at 824–25. Thus, American Family is entitled to limit its coverage to exclude loss caused by mold without restricting the exclusion to only fortuitous loss. The cases cited by Intervener rely on the finding of a proximate covered cause which entitles the insured to coverage over the entire loss; however, as stated above, Arizona has not adopted the "efficient proximate cause" rule.

Moreover, Intervener offers no plausible reason for the existence of the concurrent causation provision if not to underscore the very result which American Family seeks in this case. Indeed, the position that Intervener advocates requires this Court not only to adopt the "efficient proximate cause" rule but also to ignore the concurrent causation provision in American Family's policy. This would be a breathtaking undertaking even for a court more inclined than this one to rewrite the contract between the parties.

Even in the absence of the concurrent causation clause, it is clear—and should be to a layman—that loss caused by mold is excluded. Unlike some coverage issues, where analysis and rhetoric move one from a state of complexity to a state of simplicity and clarity, the reverse is true with the mold exclusion in this policy. The policy says loss caused by mold is excluded. Enforcing the policy as written, this Court concludes loss caused by mold is excluded.

1. Contrary to Intervener's argument that the benefit of an insured's bargain is that an insurance company pays for the damages caused by fortuitous events, American Family noted several fortuitous events which are expressly excluded from coverage in the policy, such as floods, surface water, waves, tidal water, earthquakes, landslides, volcanic eruptions, etc.

## C. The "Resulting Loss" Clause

Plaintiff argues that the so-called "resulting loss" clause contradicts the exclusionary clause relied upon by American Family. She points out that the basic insurance coverage provides:

We cover risks of accidental direct physical loss to property described in Coverage A—Dwelling and Dwelling Extension, unless the loss is excluded in this policy.

The policy then lists "losses not covered" as exclusions to 2 through 8, including 6.c. which excludes mold. Following the exclusions, is the so-called "resulting loss" provision which provides:

However, we do cover any resulting loss to property described in Coverage A—Dwelling and Dwelling Extension from items 2 through 8 above not excluded or excepted in the policy.

■ The Plaintiff argues that the resulting loss clause contradicts the exclusions. The Court disagrees. By its very wording, the "resulting loss" clause only reaffirms coverage for resulting loss "... not excluded or excepted in the policy." As pointed out by American Family, courts from other jurisdictions have construed similar "ensuing loss" provisions in the same manner. For example, the California Court of Appeals explains:

We interpret the ensuing loss provision to apply to the situation where there is a "peril," i.e., a hazard or occurrence which causes a loss or injury, *separate and independent* but resulting from the original excluded peril, and this new peril is not an excluded one, from which loss ensues. For example, in *Murray*, the initial excluded peril was the corrosion of the pipe and leakage of water, and the secon resulting peril was the settling of soil.

*Acme Galvanizing Co., Inc. v. Fireman's Fund Ins. Co.*, 221 Cal.App.3d 170, 179–80, 270 Cal.Rptr. 405, 411 (Cal.Ct.App.1990)

(emphasis added). Other courts which have interpreted this clause similarly hold that the resulting loss provision does not reinsert coverage for excluded losses, but reaffirms coverage for secondary losses ultimately caused by excluded perils. *See e.g., Ames Privilege Assoc. v. Utica Mut. Ins. Co.*, 742 F.Supp. 704, 708 (D.Mass. 1990) (perils which are excluded by the policy cannot be, at the same time, perils which are not excluded, and for which the defendant would be liable for any ensuing loss); *Schloss v. Cincinnati Ins. Co.*, 54 F.Supp.2d 1090, 1094–95 (M.D.Ala.1999) (same), *aff'd without opinion*, 211 F.3d 131 (11th Cir.2000); *Brodkin v. State Farm Fire & Cas. Co.*, 217 Cal.App.3d 210, 218, 265 Cal.Rptr. 710, 714 (Cal.Ct.App.1989) ("It is not the intent of [the ensuing loss provision] to enlarge the items which are covered under the policy."); *McDonald v. State Farm Fire & Cas. Co.*, 119 Wash.2d 724, 734, 837 P.2d 1000, 1005 (Wash.1992) (ensuing loss clause provides that if one of the specified uncovered events takes place, any ensuing loss which is otherwise covered by the policy will remain covered; however, the uncovered event itself, however, is never covered).

■ Relying again on the resulting loss provision, Intervener argues that mold releases mycotoxins which are considered biological contaminants that constitute an environmental hazard recognized by the Environmental Protection Agency ("EPA"). Thus, Intervener asserts that the toxins released by mold spores are a separate and independent loss resulting from mold. As such, Intervener contends the toxins are an ensuing loss which is not excluded or excepted in the policy. *See Roberts v. State Farm Fire & Cas. Co.*, 146 Ariz. 284, 286, 705 P.2d 1335, 1337 (Ariz. 1985) (although damage caused by bees is an excluded cause of loss, the honey seepage from the hive after the removal of bees is a covered ensuing loss). American

Family, however, argues that the mycotoxins and mold spores are not distinct and separable from the mold itself. Applying the reasoning in *Roberts,* if after removal of the mold, the mycotoxins continued to exist separate and apart from the mold, then the mycotoxins would be an independent and distinct ensuing loss. However, Intervener's own EPA official publication states that the toxins are produced and released by the mold; therefore, removal of the mold would presumably also remove the mycotoxins. As such, the mycotoxins do not constitute a *separate and independent* loss resulting from mold.

Here, there is no separate and independent peril. The claimed damage is mold. The proposed remediation is removal of the mold. Calling it a pollutant does not change the result. It is still mold. The policy expressly excludes any losses that are caused by and result from mold. The "resulting loss" clause does not resurrect the excluded peril to provide coverage.

### D. Personal Property Coverage

Plaintiff directs the Court to COVERAGE B—PERSONAL PROPERTY and first notes that no exclusion for mold is found in the Personal Property coverage. However, COVERAGE B is coverage for "... risks of accidental direct physical loss to property described in Coverage B ... when caused by a peril listed below, unless the loss is excluded in this policy."

Though Plaintiff suggests that there would be coverage pursuant to paragraph (14), Accidental Discharge or Overflow of Water or Steam, and notes that there is no exclusion for mold found in the Personal Property coverage, Plaintiff fails to demonstrate how this is a claim for direct physical loss to personal property.

### E. Supplementary Coverage

Plaintiff then argues for coverage under the SUPPLEMENTARY COVERAGES—SECTION I of the policy which provides:

(12) **Pollutant Cleanup and Removal.** **We** will pay up to $10,000 to cover **your** expense to extract **pollutants**, or covered property which becomes a **pollutant**, from land, water, insured buildings or other structures, or **your** personal property. Such loss must occur on the **insured premises** and must be caused by or result from a covered cause of loss under Section I of this policy, during the policy period. This coverage is additional insurance. Pollutant is defined in the policy as follows:

**Pollutant** means any solid, liquid, gaseous or thermal irritant or contaminant, in any form, including, but not limited to lead, asbestos, formaldehyde, radon, any controlled chemical substance or any other substance listed as a hazardous substance by any governmental agency. It also includes smoke, vapor, soot, fumes, alkalis, chemicals, garbage, refuse and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Plaintiff fails to quote the coverage portion of SUPPLEMENTARY COVERAGES—SECTION I which provides:

**We** provide the following Supplementary Coverages. These coverages are subject to all terms of this policy, except where modified by the Supplementary Coverage.

Plaintiff contends that "mold clearly falls within the definition of a pollutant ..." (Cross Mot., p. 7). However, Plaintiff fails to demonstrate why this is so clear. Pollutant is defined as any irritant or contaminant of the type which is listed as a "hazardous substance by any governmental agency." Nowhere is it suggested that mold falls into this category.

The definition also includes "smoke, vapor, soot, fumes, alkalis, chemicals, garbage, refuge and waste." By listing these specific items, the insurance company is deemed to have excluded those items not listed. Mold is not listed. "Waste" is further defined to include materials to be recycled, reconditioned, or reclaimed. Again, Plaintiff fails to demonstrate how mold falls into any of these categories.

■ The policy expressly excludes mold as a cause of loss. The Court concludes that the definition of pollutant cannot be construed as covering mold; and by the stronger reasoning, fails to satisfy the language above-referenced "except where modified by the Supplementary Coverage." Stated simply, the Supplementary Coverage section on pollution clean-up does not modify the mold exclusion so as to provide coverage for mold remediation.

Intervener argues, however, that even if the policy definition of pollutant does not cover mold, the mycotoxins produced by the mold are a separate and distinguishable peril that constitutes a recognized environmental pollutant. However, Intervener's argument fails for the same reason as Plaintiff's. Even if the mycotoxins are determined to be a pollutant within the policy's definition, the policy expressly provides coverage only for extraction of pollutants caused by or result from a covered cause of loss. Intervener argues that the mycotoxins were caused by the water leak, which is a covered cause of loss. However, the mycotoxins are released by the mold, which in of itself is an excluded cause of loss. Thus, the supplementary coverages provision does not cover the removal of the mycotoxins.

### F. Reasonable Expectations Doctrine

Plaintiff invokes the "reasonable expectation" doctrine set forth in *Darner Motor Sales, Inc. v. Universal Underwriters Ins.* *Co.*, 140 Ariz. 383, 682 P.2d 388 (Ariz.1984). Plaintiff claims "she understands her policy to mean that coverage exists for all damages which resulted from the water pipe break, a covered peril, including mold damages." Her counsel argues, however:

Given the contradictory provisions of American Family's policy, the ambiguity of its mold exclusion provision as opposed to the resulting loss provision, and the unambiguous additional coverage for pollutant clean-up afforded pursuant to the Supplementary Coverage section of Plaintiff's policy, Plaintiff's understanding of the policy is clearly reasonable and therefore affords coverage for the mold.

American Family argues that Plaintiff has failed to plead a claim for reasonable expectations either in her complaint or in the case management report. Even if this theory is considered well-pleaded and properly before the Court, Plaintiff fails to set forth facts which would trigger application of the reasonable expectations doctrine.

■ While the Plaintiff has testified that she understands her policy to mean that coverage exists for all damages resulting from a water pipe break (Pl.'s SOF, Ex. O), a subjective belief developed after the loss is insufficient to create coverage where none exists under the policy. *Id.* at 390, 682 P.2d at 395. As pointed out in *State Farm Fire & Cas. Co. v. Powers*, 163 Ariz. 213, 216, 786 P.2d 1064, 1067 (Ariz. Ct.App.1989), coverage cannot be defeated "by simply putting the insured on the witness stand and asking him ... 'did you reasonably expect that you would be covered?'" Without more, the reasonable expectations doctrine does not render an exclusion unenforceable.

■ Plaintiff, however, relies on *Darner* to argue that potential circumstances exist

which may preclude enforcement of a provision that conflicts with the insured's reasonable expectation of coverage. The plaintiff in *Darner* was induced by an insurance agent's representations of coverage which were contrary to the terms of the agreement. 140 Ariz. at 385–87, 682 P.2d at 390–392. Furthermore, relying on the agent's representations, the plaintiff never read the policy and believed that he did not need to. *Id.* Finally, through discussions with the plaintiff, the insurer and/or insurance agent knew or had reason to know that the plaintiff would not have purchased the agreement had he known about the exclusion provision at issue. *Id.* The only similarity between *Darner* and this case is that Plaintiff here did not read the policy before the loss occurred. Indeed, Plaintiff has testified that she does not recall purchasing the policy nor any conversations with the agent at or prior to its purchase (Def.'s Reply, Ex. 1). As such, none of the other factors that existed in *Darner* are present here. Accordingly, the reasonable expectations doctrine does not apply.

Plaintiff also asserts claims for bad faith and punitive damages arising from the wrongful denial of a covered claim. Having determined there is no coverage, the Court need not reach the issues of bad faith and punitive damages. Those claims will be dismissed with prejudice.

## II. MOTIONS TO STRIKE

American Family seeks to strike an expert report authored by Charles R. Leathers, Ph.D., titled "Investigation of Air Quality, Water Damage & Mold Infestation at the home of Mrs. Shirley Cooper, 1607 East Libra, Tempe, Arizona 85283" (Pl.'s SOF, Ex. J). American Family further seeks to strike excerpts from Plaintiff's depositions (Pl.'s SOF, Ex. L).

American Family argues that the Leathers report and the depositions excerpts are inadmissible hearsay. Furthermore, American Family argues that Dr. Leather's report is inadmissible because Plaintiff failed to demonstrate that Dr. Leathers is competent to give an expert opinion and the report fails to establish the factual basis for the opinions. Plaintiff asserts that Plaintiff will file a supplemental disclosure identifying Dr. Leathers as an expert who will testify at trial. Plaintiff further argues that the deposition testimony is admissible as sworn testimony of a lay witness. However, even if the Court admits Dr. Leather's report and the excerpts of the Plaintiff's deposition, Plaintiff is not entitled to summary judgment. Accordingly, American Family's motion is denied.

American Family also seeks to strike Intervener's citations to the Fire, Casualty and Surety Bulletins in the Reply in Support of Intervener's Brief. American Family asserts that the bulletins are neither proper legal authority nor admissible evidence. Intervener did not respond. However, as with the Plaintiff's deposition testimony and expert report, even if the Court admits the bulletins, this Court's decision would remain the same. Thus, American Family's Motion to Strike Intervener['']s Citations to the FC & S Bulletins is denied.

## III. DISPOSITION

**IT IS HEREBY ORDERED** granting Defendant's Motion for Summary Judgment (Doc. # 28) and denying Plaintiff's Cross Motion for Summary Judgment (Doc. # 43);

**IT IS FURTHER ORDERED** denying Defendant's Motion to Strike Hearsay Report and Lay Opinions (Doc. # 50);

**IT IS FURTHER ORDERED** denying Defendant's Motion to Strike Intervener['']s Citations to the FC & S Bulletins (Doc. # 82);

**IT IS FURTHER ORDERED** denying Plaintiff's Motion to Continue Discovery Deadline (Doc. # 83) as moot;

**IT IS FURTHER ORDERED** that the Clerk shall enter judgment accordingly.